J-A01036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DAVID ALLEN HARRELL | |
| Appellee | No. 1891 EDA 2014 |

Appeal from the Order Entered June 17, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000559-2014

BEFORE: LAZARUS, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 30, 2016**

The Commonwealth appeals the order entered in the Court of Common Pleas of Delaware County granting David Allen Harrell's motion to suppress. The Commonwealth raises one issue for our review: Whether the trial court erred in granting Harrell's motion to suppress where the officer, who was responding to a domestic violence report and arrested Harrell after observing injuries to his girlfriend, searched Harrell's bag without a warrant based on his belief that the bag contained a weapon.[1] After our review, we affirm on the opinion authored by the Honorable Richard Cappelli.

We begin by noting our well-settled standard of review:

_____

[1] Appellee Harrell has not filed a brief on appeal.

*Former Justice specially assigned to the Superior Court.

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014) (internal quotation marks and citations omitted).

The suppression court issued findings of fact and conclusions of law.[2] The court found that Corporal Jason McDevitt, after responding to a domestic violence call, identified the victim, Tina Magaw, and defendant Harrell. Harrell attempted to walk away, stating, "Let me just grab my stuff and get out of here now. I don't want any trouble." N.T. Suppression Hearing, 5/21/14, at 28. Harrell removed a black gym bag from a parked SUV. Corporal McDevitt arrested Harrell for simple assault, patted him down, handcuffed him and placed him in the back of a police car. There was

---

[2] *See* Pennsylvania Rule of Criminal Procedure 581(1) ("At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.").

no testimony that Harrell resisted or struggled; nor was there testimony that Harrell made any sudden movements toward the bag. Officer Doyle arrived as back up, and Corporate McDevitt searched Harrell's gym bag. Inside the bag, Corporal McDevitt found gym clothes, an ID card on a lanyard, and a Pepsi "storage can." The contents of the can were not discovered until the can was seized and searched without a warrant. **See** Findings of Fact, 6/17/14, ¶¶ 1-22, citing N.T. Suppression Hearing, **supra** at 23-55. Inside the Pepsi can, Corporal McDevitt recovered 100 oxycodone pills contained in ten separate bags, and 6 individual oxycodone pills.

The Commonwealth argues that the warrantless search was proper as it fell within the "search incident to arrest" exception to the warrant requirement. We disagree.

When asked why he did not obtain a search warrant if he believed the can was a concealment device, Corporal McDevitt stated, "Like I said it was a search incident to his arrest. It was on his person. He was arrested with those belongings on him, and I was basically looking out for him and our safety." N.T. Suppression Hearing, **supra** at 34-35. As the suppression court noted, it was reasonable for Corporal McDevitt to perform a pat-down search in order to remove any weapons. The scope of a search incident to arrest "extends not only to the arrestee's person but also to the area within the arrestee's 'immediate control.'" **See** Conclusions of Law, 6/17/14, ¶¶ 10-11. Here, the court concluded that the search exceeded the scope of a pat-down search or search incident to arrest, and that no other exception to

the warrant requirement applied. There were no exigent circumstances, there was nothing incriminating about the storage can that was immediately apparent, and there was no stated inventory search policy. *Id*. at 22-23. After removing the bag from Harrell and placing him in handcuffs, Corporal McDevitt removed any safety threat from the officers at the scene. *Id*. at 50.

In light of the foregoing, we discern no basis upon which to conclude that the suppression court's findings were unreasonable. ***See Commonwealth v. Taylor***, 771 A.2d 1261, 1265 (Pa. 2001). We are bound by the court's findings, and we find no legal error in the court's conclusion that Corporal McDevitt's search exceeded the scope of a lawful search incident to arrest and that no other exception to the warrant requirement is applicable. Therefore, we rely upon Judge Cappelli's June 17, 2014 Findings of Fact and Conclusions of Law, as well as his October 24, 2014 Opinion, to affirm the order granting suppression. We direct the parties to attach copies of those opinions in the event of further proceedings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2016

- 4 -

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, COMMONWEALTH OF PENNSYLVANIA
### CRIMINAL DIVISION

| | |
|---|---|
| Commonwealth of Pennsylvania | NO. CP-23-CR-0000559-2014 |
| v. | |
| David Allen Harrell | |

## OPINION

CAPPELLI, J.                                                    Date: October 24, 2014

The Commonwealth, hereinafter "Appellant", contends the trial court erred in granting the Defendant's Motion to Suppress Evidence. The trial court finds that the Suppression Hearing Testimony does not support the validity of the search of the "soda can container"[1] inside the Defendant's gym bag and was beyond the scope of a permissible search incident to arrest where the defendant was at all times under police control and handcuffed in the back of the police patrol car. Similarly, the Suppression Hearing Testimony failed to establish a departmentally mandated inventory policy such that the contents of the soda can container would have inevitably been discovered. Therefore, the

---

[1] A soda can safe is a type of "diversion safe" or "stash safe" marketed as a safe and secure place to covertly and inconspicuously hide valuables. This line of hidden-compartment-safes are designed, labeled and weighted to evade detection due to their resemblance to ordinary household consumer products. The variety of diversion safes range from surge protectors with a compartment to shaving cream cans, wall clocks and hardbound books etc. See, www.TheHomeSecuritySuperstore.com/diversion-safes. www.homedepot.com/diversion-safe. See also, www.spyemporium.com/diversion-hidden-safes ; www.rollingpaperwarehouse.com/stash-safes; or www.grasscity.com.

1

Appellant's contentions of error are meritless. The trial court's grant of suppression should be affirmed.

## I. Procedural and Factual Background

The Commonwealth appeals from this court's June 16, 2014 Order granting Appellee's Motion to Suppress the contents of a closed soda can container inside his gym bag at the time he was arrested for domestic assault.

Appellee, David Harrell, was arrested on or about October 8, 2013 and charged with Possession with Intent to Deliver, Possession of a Controlled Substance (oxycodone) and Simple Assault. Following a preliminary hearing all of the above charges were bound over and held for court.

Appellee's counsel filed a Motion to Suppress on or about April 1, 2014. Thereafter, the suppression hearing was then held on May 21, 2014. The only testimony provided by the Commonwealth at the hearing was by Ridley Township Police Corporal Jason McDevitt. The Appellee offered the testimony of Ms. Tina Magaw, the estranged mother of the Appellee's children and the purported victim in the underlying domestic assault call.

Prior to the commencement of Corporal McDevitt's testimony discussion between Appellant's counsel and counsel for the Appellee was placed on the record as to what Appellee's counsel was seeking to suppress including the contents of a gym bag in the Appellee's possession at the time of arrest as well as one hundred and six (106) oxycodone pills discovered as the result of a search of a "Pepsi" container can inside the gym bag. Appellee did not challenge the propriety of the arrest.

Ridley Township Police Corporal Jason McDevitt testified that on October 8, 2013, at or about 4:05 p.m. he was dispatched to 1307 Worrall Street, Crum Lynne, Pennsylvania

2

19022[2] for an active domestic assault call *(Suppression Hearing Testimony 5/21/14 (hereinafter "SHT"), pp. 23-24).* Corporal McDevitt is a thirteen (13) year veteran of the Ridley Township Police Department. *(SHT, p.13).* He has been assigned to the Delaware County Criminal Investigation Division ("CID") Narcotics Task Force for the past six (6) years. *(SHT, p.15).* Corporal McDevitt explains that the CID task force is made up of several police officers from various departments conducting undercover narcotics investigations working with confidential informants, preparing search warrants and executing search warrants. *(SHT, p. 15, 12-19).* By way of background, Corporal McDevitt testified that he has attended drug interdiction training seminars including the narcotics "Top Gun" school wherein an entire day of training is specifically devoted to compartments used, inter alia, to conceal drugs. *(SHT, p. 16).* Corporal McDevitt estimates he has personally made over five hundred (500) drug arrests *(SHT, p.18)* and he has been qualified as an expert in court as an expert in illegal drug and narcotics trafficking. *(SHT, pp. 18-19).* Corporal McDevitt testified that prior to the date at issue he attended schools where he learned about soda can type containers used to conceal controlled substances. *(SHT, pp. 21-22).* When used in connection with the illegal drug trade these containers are used to hide money, illegal drugs and weapons. *(SHT, p. 23).* On arrival at the domestic assault call, Corporal McDevitt identified the purported domestic assault victim, Ms. Tina Magaw, on the steps of the residence located at 1307 Worrall Street, Crum Lynne, Pennsylvania 19022 *(SHT, p. 25).* Corporal McDevitt concomitantly observed the Defendant, Mr. David Harrell, standing behind a large parked

---

[2] Corporal McDevitt describes the area "it's one of our lower income areas of the township. It's known as 21 District. That's the District I've been patrolling for the last six years. It has been stated in court as well as other courts that it is a high drug and high crime area". *(SHT, p.24, 5-18).* The area is also primarily residential with single family homes and apartment buildings. *(SHT, p.25, 1-3).*

3

SUV, variously leaning into an open back passenger door (*SHT, pp. 25, 37-38*). He observed Mr. Harrell yelling at Ms. Magaw from his position at the back of the SUV. (*SHT, pp. 26-27*). Corporal McDevitt approximates the distance from where the Defendant was standing to the front porch where Ms. Magaw was standing to be approximately ten (10') to fifteen (15') feet (*SHT, p. 37*). Corporal McDevitt spoke to Ms. Magaw and he noticed her torn shirt and several red marks on her body with redness and swelling on her arm. He observed abrasions on her face. He testified Ms. Magaw's demeanor was emotional and crying. (*SHT, p. 27, 10-19*). Corporal McDevitt testified that a second responding officer, Officer Doyle, arrived a minute and a half to two minutes after his own arrival on the scene (*SHT, p. 37*). As Corporal McDevitt approached the Defendant, Mr. Harrell, the Defendant attempted to walk away saying "Let me just grab my stuff and get out of here now. I don't want any trouble. Let me just grab my things and leave," at which time the Defendant removed a black gym bag (described elsewhere as a two-strap backpack type gym bag, see *SHT, p. 48: 5-12*) from the back seat of the SUV vehicle and put it over his shoulder (*SHT, p. 28-29*). At that point, Corporal McDevitt grabbed the Defendant by the arm, removed the gym bag, informed the Defendant he was under arrest and walked him to the police patrol car. (*SHT, pp. 28, 18-24, 48: 13-18*). At the patrol car, Corporal McDevitt performed a "pat-down" search of Mr. Harrell. He searched for weapons and placed him into the back of the police car after removing a wallet and some money and placing him in handcuffs. (*SHT, pp. 28, 13-17*). There was no testimony that Mr. Harrell resisted in any way (*SHT, p. 50*). On taking the Defendant into custody and after securing the defendant in the back of the police patrol car, Corporal McDevitt having previously removed the gym bag (*SHT, pp.49: 22-25, 50: 1-4*) performed a warrantless search of its contents (*SHT, pp. 50-51*). Present for this warrantless

·4

search was the assisting officer, Officer Doyle *(SHT, p. 51)*. Besides gym clothes, Corporal McDevitt found an ASP expandable/collapsible metal baton and storage container shaped and labeled like a Pepsi soda can *(SHT, p. 31)* as well as the Defendant's identification card on a lanyard *(SHT, p. 34:2-6)*. There was no testimony that the Defendant struggled, fought, or threatened Corporal McDevitt. Further, there was no testimony the Defendant made any sharp or sudden movements to retrieve any weapon from the gym bag in an effort to threaten Corporal McDevitt or flee *(SHT, p. 49)*. Corporal McDevitt testified to probable cause to arrest the Defendant for domestic assault and subject him to a search incident to arrest *(SHT, p. 35)*. Beyond the probable cause for the domestic assault arrest, Corporal McDevitt did not expressly articulate suspicion or concern for any contemporaneous illegal activity *(SHT, pp. 13-67)*. Corporal McDevitt testified he was unaware of the contents of the Pepsi storage can *(SHT, pp. 32-33)*. The fact that the Pepsi storage can concealed an illegal controlled substance was neither readily nor immediately apparent to Corporal McDevitt *(SHT, pp. 32-33)*. Corporal McDevitt testified that the Pepsi soda can style container that he discovered in the gym bag is sold legally *(SHT, pp. 54-55)*. Corporal McDevitt conceded the Pepsi storage can itself is not incriminating. The illegal contents of the Pepsi storage can were not discovered until after the can was seized and opened (searched) without a warrant *(SHT, p. 33)*. There was no weapon inside the container. Instead, inside the compartment there were ten (10) bundles or packages of ten (10) oxycodone pills plus six (6) individual oxycodone pills. *(SHT, p. 33, 19-25)*.

When asked directly why he did not obtain a search warrant to search the Pepsi can that he believed to be some kind of concealment device, Corporal McDevitt replied, "Like I said it was a search incident to his arrest. It was on his person. He was arrested with those

5

belongings on him, and I was basically looking out for him and our safety. I was looking out to make sure that there was no money or valuables in (here) that needed to be returned to the prisoner. Like I said the money we give directly to them in the cell to avoid any type of, like you said liability to the police department, as well as any type of valuables that needed to be logged to be returned to the prisoner at a later date." Thereafter, when specifically asked "and also a weapon" he replied, "and a weapon." (SHT, pp.34:25, 35: 1-12). When asked why, he replied, "Just for like I said safety reasons, you don't want to have a weapon brought into a cell block." (SHT, p.35:15-18). In testifying about the search of the gym bag, Corporal McDevitt testified that he first noticed a pair of gloves and gym stuff and a baton. (SHT, p.51: 10-15). He said he likely placed the baton on the seat of his patrol car after removing it from the gym bag. (SHT, p. 51: 15-19). When asked if an inventory was performed, Corporal McDevitt testified "no, the only inventory that was done of the stuff that wasn't returned to Mr. Harrell." (SHT, p. 52: 8-15). With respect to the search of the Pepsi container can, he testified the can was sealed albeit with a loose lid that didn't sit evenly. (SHT, p. 52: 17-22). Once Corporal McDevitt discovered the can didn't contain any weapon but instead found pills he re-sealed the container and placed it on the seat of his patrol car and drove to the station. (SHT, p. 55: 5-24). Corporal McDevitt said if he didn't search the can it was going to be left out on a table (at the station) where numerous other prisoners can encounter it (the soda can), if it is not seized as evidence (the soda can) and is left out on a table where other prisoners walk in and can encounter those items. (SHT, p. 64: 4-18). Corporal McDevitt next testifies that because it is legal to own the Pepsi can container, if he didn't look in it, he would have just left it for the defendant. (SHT, p. 65:1-15). Ultimately, he testified as to whether he would simply leave the Pepsi container can out on a table at the police station that

6

"no, it would never be left there before I looked in it. I would look in it first because I know what kind of can it is. I know that money can be placed in there. I know that drugs can be placed in there, weapons; so therefore, I would look in the can first before placing (it) where the prisoners come in and out." (*SHT, p. 69:4-22*). There was no testimony elicited from Corporal McDevitt regarding any routine universally mandated departmental inventory policies and procedures adopted by the Ridley Township Police Department such that the contents of the can would have arguably been inevitably discovered. (*SHT pp. 13-67*). Tina Magaw, the purported domestic assault victim, was called to testify by the Defendant. (*SHT, pp. 70-90*). Ms. Magaw testified that she and the Defendant resided together at 1307 Worrell Street Crum Lynne, Pennsylvania. (*SHT, p. 71: 1-15*). Ms. Magaw testified that the defendant was inside the house and she was on the porch when police arrived in response to her domestic assault call. (*SHT, pp. 72-74*). She testified the Defendant asked to leave and exited the residence on arrival of the police and that he was arrested outside the residence. (*SHT, p. 74*). She said the defendant was not holding the gym bag at the time of the arrest. (*SHT, p.74:11-13*). She said she was questioned by Corporal McDevitt regarding what car the Defendant was driving (*SHT, pp. 74-75*). After she indicated the SUV vehicle, she testified the SUV was searched and the gym bag was removed from the back seat of the SUV while the Defendant was handcuffed in the back of the police car. (*SHT, p. 75: 9-18*). She testified she could view the search of the gym bag as the search was conducted by Corporal McDevitt directly in front of her and described the bag as having two (2) draw strings. (*SHT, p. 76: 19-22*). She was asked if she was aware of the contents of the Pepsi can container and she denied knowledge of the pills. (*SHT, p. 77:3-14*). Thereafter she contends she left the scene to go to the police department to be photographed. (*SHT, p.77: 10-14*). Ms. Magaw

7

testified she lives with the Defendant and they have four (4) children together. *(SHT, pp. 77-79)*. Ms. Magaw testified that the four children stay with the Defendant while she works approximately 75 hours per week as a nursing assistant. *(SHT, pp. 86-88)*.

Absent any request from the Commonwealth to supplement the record, the undersigned made its decision on the Motion to Suppress by Order of June 16, 2014 granting suppression and pursuant to Pa.R.Crim.P. 581 (I), Findings of Fact and Conclusions of Law were made.

## II. Issues

In its notice of appeal, the Commonwealth states that the order will terminate or substantially handicap prosecution. In its concise statement the Commonwealth sets forth two issues for appellate review. First, the trial court erred in ruling the evidence seized from the Defendant was not obtained during a lawful search incident to arrest and next, that the trial court erred in ruling that the unlawfully seized evidence would have inevitably been discovered in a lawful inventory search.

## III. Discussion

Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Powell*, 994 A.2d 1096, 1101 (Pa.Super. 2010), citing Pa.R.Crim.P. 323 (h); *Commonwealth v. Iannaccio*, 480 A.2d 966 (Pa. 1984). When reviewing a decision from the suppression court, the appellate court (1) determines whether the record supports the factual findings of the suppression court below, and (2) evaluates the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Bull*, 555 A.2d 1341 (Pa. Super. 1989). Where the Commonwealth challenges the decision of the

8

suppression court, the appellate court considers only the evidence of the defendant's witnesses and so much of the evidence for the prosecution which when read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Hamlin*, 469 A.2d 137, 139 (Pa. 1983). The appellate court is bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error. *Commonwealth v. James*, 486 A.2d 376, 379 (Pa. 1985).

The appellate standard of review in addressing a challenge to an order granting suppression of evidence is well-settled: "The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Chernosky*, 874 A.2d 123, 124 (Pa. Super. 2005).

At a hearing on suppression, "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some, or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. Ct. 2003); *Commonwealth v. Jones*, 845 A.2d 821, 824-25 (Pa. Super. Ct. 2004); *Commonwealth v. Acosta*, 815 A.2d 1078, 1082 & n.2 (Pa. Super. Ct. 2003) (en banc); see also, e.g., *Commonwealth v. Torres*, 564 Pa. 86, 95, 764 A.2d 532, 536–37 (2001); *Commonwealth v. Pickron*, 535 Pa. 241, 246, 634 A.2d 1093, 1096 (1993); *Commonwealth v.DeWitt*, 530 Pa. at 302, 608 A.2d at 1031; *Commonwealth v. McClease*, 750 A.2d 320,

9

*323-24 (2000)*; cf. *Commonwealth v. Millner*, *585 Pa.237 at 246, 888 A.2d at 685* (restating the "well-settled" standard of appellate review of rulings on suppression).

The American law of search and seizure is embodied in a single sentence in the Fourth Amendment to the U.S. Constitution, which provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized *.U.S. Const. amend. IV*; see also *U.S. Const. amend. XIV, § 2 (providing that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws")*.

A provision of Pennsylvania's Constitution provides, in similar terms, independent, and at times greater, protections to persons within the Commonwealth: The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant. *Pa. Const. art. 1, § 8*.

Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. *Commonwealth v. Bostick*, *64 A.2d 543, (Pa.Super. 2008)*; *Commonwealth v. Burgos*, *64 A.3d 641, 648 (Pa.Super. 2013) ("Warrantless searches and seizures are unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement."); Commonwealth v. Caban*, *60 A.3d 120, 127 (Pa.Super. 2012) (a search conducted without a warrant is constitutionally*

10

*impermissible unless an established exception applies).* As a general rule, Pennsylvania courts hold that a search warrant is required before police may conduct any search and without the applicability of the outlined exceptions, a warrantless search is presumptively unreasonable. *Commonwealth v. Whitlock,* 69 A.3d 635, 637 (Pa.Super. 2013); *see also Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 900 (1995); *Commonwealth v. McCree,* 592 Pa. 238, 247, 924 A.2d 621, 627 (2007).

To have standing to assert a violation of this constitutional right to be free of unlawful search and seizure, the subject of the search must establish a constitutionally protected privacy interest in the area to be searched. *Commonwealth v. Millner,* 585 Pa. 237, 256-57, 888 A.2d 680, 692 (2005). An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. *Commonwealth v. Whiting,* 767 A.2d 1083, Super. 2001, *appeal denied* 796 A.2d 982, 586 Pa. 699. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances. *Commonwealth v. Viall,* 890 A.2d 419, 422 (Pa. Super. 2005).

The Pennsylvania Supreme Court has long recognized that an individual has an expectation of privacy in his or her personal belongings from warrantless searches and seizures. *Commonwealth v. Dowds,* 761 A.2d 1125, 563 Pa. 377 (2000). *Commonwealth v. Timko,* 491 Pa. 32, 417 A.2d 620 (1980) ("absent exigent circumstances, a warrantless

11

search of luggage or other personal property, in which a person has a reasonable expectation of privacy is not permissible").

Generally under Pennsylvania law, courts hold that a search warrant is required before police may conduct any search and without the applicability of the outlined exceptions, a warrantless search is presumptively unreasonable. *Commonwealth v. Whitlock, 69 A.3d 635, 637 (Pa. Sup. 2013) (see also Commonwealth v. White, 543 Pa. 45, 669 A.2d 896, 900 (1995); Commonwealth v. McCree, 592 Pa. 238, 924 A.2d 621, 627 (2007); Commonwealth v. Jones, 605 Pa. 188, 988 A.2d 649, 656 (2010)).*

A police officer may search the arrestee's person and the area in which the person is detained in order to prevent the arrestee from obtaining weapons or destroying evidence, but otherwise, absent an exigency, the arrestee's privacy interests remain intact as against a warrantless search. In short, there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody. *Commonwealth v. White, 543 Pa. at 57, 669 A.2d at 902 (1995).*

The Pennsylvania constitution authorizes limited search for weapons when an officer has reasonable and articulable suspicion that a suspect may have access to a weapon. Commonwealth v. Morris, 537 Pa. 417, 644 A.2d 721 (1994).The scope of a search incident to arrest "extends not only to the arrestee's person but also into the area within the arrestee's "immediate control". *Commonwealth v. Taylor*, 565 Pa. 140, 158, 771 A.2d 1261, 1271 (Pa. 2001). The two-part rationale for the search incident to arrest exception are (1) the need to disarm an arrestee for safety purposes and (2) the need to preserve evidence. *Id.*

12

A search incident to arrest complies with the Fourth Amendment when it is confined to, and controlled by, the circumstances warranting the intrusion. *U.S. v. Myers,308 F.3d 251, 266-267 (3d Cir. 2002).*

The possibility that a search made simultaneously with an arrest may uncover some hidden evidence is not sufficient to permit such a search. *Taylor, 565 Pa. at 158-59, 771 A.2d at 1272-73.* Mere suspicion is not enough to justify a search when an officer has seen others use an object to package drugs. *Commonwealth v. Stevenson, 560 Pa. 345, 358-59, 744 A.2d 1261, 1268 (2000).*

Evidence obtained in violation of a criminal suspect's constitutional rights to be free from unreasonable search and seizure is subject to suppression under the exclusionary rule. "The exclusion of unconstitutionally obtained evidence is not a constitutional right, but a constitutional remedy." *Commonwealth v. Edmunds, 526 Pa. at 395 n.10, 586 A.2d at 898.*

Accordingly, this court concludes that Corporal McDevitt's search of the Pepsi container can exceeded the constitutionally permissible scope of a search incident to a valid arrest where the Defendant was handcuffed, patted-down, seated in the back of a police patrol car and the Corporal had assumed complete control of the gym bag in which the Pepsi container can was discovered. Also, the gravamen of the Corporal's testimony was that the search was a more generalized search for valuables, money, drugs and also weapons verses a more exigent concern for police protection. Another fact that informs the court's conclusion is that Corporal McDevitt was comfortable with his own security and the security of the Defendant and the other responding Officer Doyle that he laid the expandable baton, an actual weapon, on the seat next to him as he seized and searched the Pepsi container can.

13

This indicates that the Defendant was plainly secure and there was no material risk to the Corporal or the other officer. The Corporal would not leave a weapon where the Defendant could access it.[3] Further, Corporal McDevitt testified the Pepsi container can was in poor condition but that itself was neither illegally sold nor illegal to possess. In *Commonwealth v. Taylor*, 565 Pa. 140, 158, 771 A.2d 1261, 1271 (Pa. 2001) the Pennsylvania Supreme Court explained that the scope of a proper search incident to arrest extends only to the arrestee's person and those things within the arrestee's immediate control. *Id.* The Court held in *Taylor* that the search of two coats exceeded the proper scope of a search incident to a valid arrest because it was not performed in furtherance of either police protection or evidence preservation.

Lastly, the Commonwealth's alternative claim of error by the trial court's suppression of the pills found in the Pepsi container can, is that the pills would have inevitably been discovered. This theory too must fail. Although an administrative inventory search is a recognized exception to the warrant requirement where the pills would have "inevitably been discovered" pursuant to a properly conducted inventory search during the Defendant's booking process after he had been arrested at the police station, *see Commonwealth v. Knoche*, 451 Pa.Super. 54,59, 678 A.2d 395, 397(Pa.Super. 1996), *Commonwealth v. Zook*, 532 Pa. 79, 91, 615 A.2d 1, 7 (Pa. 1992). Corporal McDevitt expressly testified his justification for search and seizure of the container was a search incident to arrest. Additionally, no testimony was elicited for Corporal McDevitt regarding any departmental

---

[3] The front and back of a police patrol car is typically divided by a secure partition

14

inventory policy such that the pills would have been inevitably discovered from some source independent of the illegal search and seizure of the Pepsi container can.

Therefore, the claim that the pills would have inevitably been discovered and the trial court erred in suppressing the pills must also fail on grounds the record is devoid of any sufficient testimonial foundation to infer any established inventory policy that would have separately and independently led inevitably to the discovery of the pills.

## IV. Conclusion

Wherefore, for all the foregoing reasons, the trial court's Order of June 16, 2014 should be affirmed.

BY THE COURT:

_____

Richard M. Cappelli, Judge

15

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL

| Commonwealth of Pennsylvania | : | |
| | : | DELAWARE COUNTY |
| V. | : | |
| David Allen Harrell | : | CP-23-CR-0000559-2014 |

## ORDER

AND NOW, too wit, this 16ᵗʰ day of June 2014, upon consideration of the "Defendant's Motion to Suppress Physical Evidence," filed in the above matter, after a hearing on May 21, 2014 and having considered the memoranda submitted by counsel, it is hereby ORDERED and DECREED that said motion is **GRANTED.**

FURTHER, in support of the foregoing the court hereby sets forth the following Findings of Fact and Conclusions of Law:

## I. Findings of Fact

1. On October 8, 2013, at or about 4:05 p.m., Corporal Jason McDevitt of the Ridley Township Police Department was dispatched to 1307 Worrall Street, Crum Lynne Pennsylvania for an active physical domestic assault call (N.T. 5/21/14, pp. 23-24);

2. Corporal McDevittt is a 13 year veteran of the Ridley Township Police Department. (N.T. 5/21/14; p. 13); Currently Corporal McDevitt has been assigned to the Delaware County Criminal Invesetigation Division Narcotics Task Force for the past six years. (N.T. 5/21/14 p.15);

3. Corporal McDevitt has undergone drug interdiction training seminars including "Top Gun" school including an entire day of training specifically devoted to compartments used, inter alia, to conceal drugs and other indicia of illegal drug activity (N.T. 5/21/14, p.16);

4. Corporal McDevitt testified that prior to the Harrell arrest he attended schools where he learned about soda can type containers used to conceal controlled substances and other indicia of drug related activity . (N.T. 5/21/14 pp. 21-22);

5. On arrival Corporal McDevitt identified the alleged victim, Ms. Tina Magaw, on the steps of the residence located there (N.T. 5/21/14, p. 25);

6. . At the same time Corporal McDevitt identified the Defendant, Mr. David Harrell, standing behind a large parked SUV, variously leaning into an open back passenger door (N.T. 5/21/14, pp. 25, 37-38);

7. Corporal McDevitt testified that a second responding officer, Officer Doyle, arrived a minute and a half to two minutes after his own arrival on the scene (N.T. 5/21/14, p. 37);

8. As Corporal McDevitt approached the Defendant, Mr. Harrell, the Defendant attempted to walk away saying "Let me just grab my stuff and get out of here now. I don't want any trouble. Let me just grab my things and leave", at which time the Defendant removed a black gym bag from the vehicle and put it over his shoulder (N.T. 5/21/14, p. 28);

9. As the Defendant attempted to walk away, Corporal McDevitt, acting on probable cause for the physical domestic assault, arrested Mr. Harrell (N.T. 5/21/14, p. 28);

10. The Defendant, Mr. Harrell, was then patted down, handcuffed, and placed in the back of a police car. There was no testimony that Mr. Harrell resisted in any way (N.T. 5/21/14, p. 50);

11. On taking the Defendant into custody and after securing the defendant in the back of the police squad car, Corporal McDevitt took control of the bag and performed a warrantless search of its contents (N.T. 5/21/14, pp. 50-51);

12. Present for this warrantless search was the assisting officer, Officer Doyle (N.T. 5/21/14, p. 51);

13. Besides gym clothes, Corporal McDevitt found an ASP expandable metal baton and storage container shaped and labeled like a Pepsi can (N.T. 5/21/14, p. 31);

14. There was no testimony that the Defendant struggled, fought, or threatened Corporal McDevitt. Further, there was no testimony the Defendant made any sharp or sudden movements to retrieve any weapon from the gym bag in an effort to threaten Corporal McDevitt or flee (N.T. 5/21/14, p. 49);

15. Corporal McDevitt testified to probable cause to arrest the Defendant for physical domestic assault and subject him to a search incident to arrest (N.T. 5/21/14, p. 35);

16. There was no material threat to police safety after the Defendant, Mr. Harrell, was placed in handcuffs and secured in the back of the police car (N.T. 5/21/14, p. 50);

17. In removing the bag from Defendant's possession and placing the Defendant in handcuffs in the back of the patrol car, Corporal McDevitt diminished any material safety threat to the officers at the scene (N.T. 5/21/14, p. 50);

18. Beyond probable cause for the physical domestic assault arrest, Corporal McDevitt did not articulate any indicia of a concern for illegal activity (N.T. 5/21/14, pp. 13-67);

19. Corporal McDevitt testified he was unaware of the contents of the Pepsi storage can (N.T. 5/21/14, pp. 32-33);

20. The fact that the Pepsi storage can concealed an illegal controlled substance was neither readily nor immediately apparent to Corporal McDevitt (N.T. 5/21/14, pp. 32-33);

21. Corporal McDevitt testified that the Pepsi soda can style container that he discovered in the gym bag are sold legally (N.T. 5/21/14, pp. 54-55);

22.     The Pepsi storage can itself is not incriminating. The illegal contents of the Pepsi storage can were not discovered until after the can was seized and searched without a warrant (N.T. 5/21/14, p. 33);

23.     Additionally, there was no testimony by Corporal McDevitt regarding any routine universally mandated departmental inventory policies and procedures mandated by the Ridley Township Police Department such that the contents of the can would have arguably been inevitably discovered.

## II. Conclusions of Law

1.     On a motion for suppression of evidence alleged to have been obtained in violation of an accused's rights, "the Commonwealth shall have the burden of going forward with the evidence alleged to have been and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); Commonwealth v. Galendez, 27 A.3d 1042, 1046 (Pa.Super. 2011)(en banc). "In all cases, the burden of production is now upon the Commonwealth." See Commonwealth ex rel. Butler v Rundle, 429 Pa. 141, 239 A.2d 426 (1968). The burden of persuasion is there as well." Pa.R.Crim.P. 581 cmt. (citing Miranda v Arizona, 384 U.S. 436, 479 (1966)). When considering a motion for suppression of evidence, a preponderance of evidence is the burden of proof. "Butler establishes a preponderance of the evidence as the standard of proof." Pa.R.Crim.P. 581 cmt. "It is within the suppression court's sole province as the fact finder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some, or none of the evidence presented at the suppression hearing." Commonwealth v Elmodbdy, 823 A.2d 180, 183 (Pa.Super. 2003) (citation omitted), quoted in Galendez, 27 A.3d at 1046.

2. The Fourth Amendment to the United States Constitution provides protection to "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. Pennsylvania provides enhanced protections from unreasonable searches and seizures under Article I, Section 8 of the Pennsylvania Constitution. Commonwealth v. Miller, 56 A.3d 424, 429 (Pa.Super. 2012).

3. Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. Id. (citation omitted); see also Commonwealth v. Bostick, 64 A.2d 543, (Pa.Super. 2008); Commonwealth v. Burgos, 64 A.3d 641, 648 (Pa.Super. 2013) ("Warrantless searches and seizures are unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement."); Commonwealth v. Caban, 60 A.3d 120, 127 (Pa.Super. 2012) (a search conducted without a warrant is constitutionally impermissible unless an established exception applies).

4. As a general rule, Pennsylvania courts hold that a search warrant is required before police may conduct any search and without the applicability of the outlined exceptions, a warrantless search is presumptively unreasonable. Commonwealth v. Whitlock, 69 A.3d 635, 637 (Pa.Super. 2013); see also Commonwealth v. White, 543 Pa. 45, 669 A.2d 896, 900 (1995); Commonwealth v. McCree, 592 Pa. 238, 247, 924 A.2d 621, 627 (2007).

5. The Pennsylvania Supreme Court has long recognized that an individual has an expectation of privacy in his or her personal belongings from warrantless searches and seizures. See Commonwealth v. Timko, 491 Pa. 32, 37-38, 417 A.2d 620, 623 (1980) ("Absent exigent circumstances, a warrantless search of luggage or other personal property, in which a person has a reasonable expectation of privacy is not permissible.").

6.   A police officer may search the arrestee's person and the area in which the person is detained in order to prevent the arrestee from obtaining weapons or destroying evidence, but otherwise, absent an exigency, the arrestee's privacy interests remain intact as against a warrantless search. In short, there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody, as stated above. White, 543 Pa. at 57, 669 A.2d at 902 (1995) (internal citations omitted).

7.   The Pennsylvania Supreme Court has long recognized that an individual has an expectation of privacy in his or her personal belongings from warrantless searches and seizures. Timko, 491 Pa. 32, 417 A.2d 620 (1980) ("absent exigent circumstances, a warrantless search of luggage or other personal property, in which a person has a reasonable expectation of privacy is not permissible") .As a general rule, Pennsylvania courts hold that a search warrant is required before police may conduct any search and without the applicability of the outlined exceptions, a warrantless search is presumptively unreasonable. Commonwealth v. Whitlock, 69 A.3d 635, 637 (Pa. Sup. 2013) (see also Commonwealth v. White, 543 Pa. 45, 669 A.2d 896, 900 (1995); Commonwealth v. McCree, 592 Pa. 238, 924 A.2d 621, 627 (2007); Commonwealth v. Jones, 605 Pa. 188, 988 A.2d 649, 656 (2010)).

8.   Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. Id. (citation omitted); see also Commonwealth v. Bostick, 64 A.2d 543, (Pa.Super. 2008); Commonwealth v. Burgos, 64 A.2d 641 (Pa.Super. 2013), appeal denied 79 A.3d 635 (warrantless searches and seizures are unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement); Commonwealth v. Caban, 60 A.3d 120 (Pa.Super. 2012) appeal denied 79 A.3d 1097 (a search

conducted without a warrant is constitutionally impermissible unless an established exception applies).

9. The ability to justify a particular law enforcement practice is judged by balancing its intrusion of an individual's right to privacy against the furthering of legitimate governmental interests.

10. When the arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Chimel v. California, 395 U.S. 752 (1969). A search incident to arrest complies with the Fourth Amendment when it is confined to, and controlled by, the circumstances warranting the intrusion. U.S. v. Myers, 308 F.3d 251, 266-267 (3d Cir. 2002).

11. Pennsylvania constitution authorizes limited search for weapons when officer has reasonable and articulable suspicion that suspect may have access to a weapon. Commonwealth v. Morris, 537 Pa. 417, 644 A.2d 721 (1994).

12. The scope of a search incident to arrest "extends not only to the arrestee's person but also into the area within the arrestee's "immediate control". Commonwealth v. Taylor, 565 Pa. 140, 158, 771 A.2d 1261, 1271 (Pa. 2001). The two-part rationale for the search incident to arrest exception are (1) the need to disarm an arrestee for safety purposes and (2) the need to preserve evidence. Id.

13. Exceptions to the warrant requirement stem from the balancing of an individual's right of privacy and the need for police officers to be able to protect themselves while making an carefully crafted exception that balances the tension between the need for effective law enforcement and the constitutionally guaranteed liberty of the people.

14. Whether exigent circumstances exist so as to excuse the warrant requirement for a search depends on examination of all surrounding circumstances in a particular case. Commonwealth v. Griffin, 785 A.2d 501 (Pa.Super. 2001). Exigent circumstances exception to the warrant requirement recognizes that some situations present compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb or overriding law enforcement interests; in these cases, court's strong preference for use of warrant must give way to urgent need for immediate action. Commonwealth v. Richter, 791 A.2d 1181 (Pa.Super. 2002). However, decisions made pursuant to the exigent circumstances exception to the warrant requirement "must be made cautiously because it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances." Commonwealth v. Bostick, 958 A.2d 543 (Pa.Super.2008), appeal denied 987 A.2d 158, 604 Pa. 702.

15. The possibility that a search made simultaneously with an arrest may uncover some hidden evidence is not sufficient to permit such a search. Taylor, 565 Pa. at 158-59, 771 A.2d at 1272-73. Mere suspicion is not enough to justify a search when an officer has seen others use an object to package drugs. Commonwealth v. Stevenson, 560 Pa. 345, 358-59, 744 A.2d 1261, 1268 (2000) (citing Commonwealth v. Pinno, 433 Pa. 1, 248 A.2d 26 (1968) (even strong reason to suspect will not adequately substitute for probable cause as grounds for search and seizure)). Although Pennsylvania courts are sympathetic to the dangers and uncertainties that police officers confront while making custodial arrests, a warrantless search, however, is limited by the exigencies that necessitate its initiation. Id. The search and seizure of common containers cannot be justified on the ground that they may be used to store narcotics.

16. If the prosecution can establish by a preponderance of the illegally searched evidence would have inevitably been discovered by lawful means, then the evidence is admissible.

Commonwealth v. Gonzalez, 979 A.2d 879, 890 (Pa.Super. 2009); See Nix. v. Williams 104 S.Ct. 2501 (1984) ("The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.").

17.    Inventory searches are a well-defined exception to the search warrant requirement. Colorado v Bertine, 479 U.S. 367 (1987); See also Commonwealth v Nace, 571 A.2d 1389 (Pa. 1990). So long as warrantless inventory search is pursuant to caretaking functions of police department through an inventory search the conduct of police will not be viewed as unreasonable. Commonwealth v. Woody, 679 A.2d 817, 451 Pa.Super. 324, (Pa.Super. 1996); see also Commonwealth v. White, 543 Pa. 45, 57-58, 669 A.2d 896, 903 (1995) (stating that police can permissibly conduct an inventory search when "police are able to show that the search was in fact a search conducted for the purposes of protection of the owner's property while it remains in police custody; protection of the police against claims of lost or stolen property; and protection of the police against danger"). The purpose of an inventory search is not to find evidence of a crime. Commonwealth v. Hennigan, 753 A.2d 245, 254 (Pa.Super. 2000). Rather, an inventory takes place when it is not coupled with the intent of discovering evidence of a crime. Commonwealth v. Brandt, 244 Pa. Super. 154, 160, 366 A.2d 1238, 1241 (1976). The inventory is conducted not for the purpose of uncovering incriminating evidence, but for the purpose of safeguarding the contents of the vehicle for the benefit of both the owner and the police. Id. However, if it is found that the search was conducted as part of a criminal investigation, it is not an inventory search. White, 543 Pa. at 58, 669 A.2d at 903. When the court finds that the search constituted a criminal investigation the inventory search exception is inapplicable. Id.

18. However, for a warrantless inventory search to be conducted without being in violation of the Fourth Amendment, it must be performed pursuant to police procedures with standardized criteria and established routine. U.S. v. Valentine, 2013 WL 1285426, *5 (2013) (citing South Dakota v. Opperman, 428 U.S. 364, 369-371, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Colorado v. Bertine, 479 U.S. 367 (1987)).

19. Without a policy to guide police officers, an inventory search is unconstitutional. The inevitable discovery doctrine exception cannot be invoked freely. The government must be held by the court to meet its burden of proof if it is to be prevented from swallowing the Fourth Amendment and the exclusionary rule altogether.

20. Without testimony or written evidence of inventory search procedures, a court cannot simply assume that, had the warrantless search of the bag not taken place, what would have happened once it was transported to the police station.

21. Evidence obtained in violation of a criminal suspect's constitutional rights to be free from unreasonable search and seizure is subject to suppression under the exclusionary rule. The exclusion of unconstitutionally obtained evidence is not a constitutional right but a constitutional remedy...Edmunds, 526 Pa. at 395 n.10, 586 A.2d at 898 n.10 (discussing the relationship between the federal and Pennsylvania constitutional provisions on unreasonable search and seizure and rejecting under Pa. Const. Art. I, Section 8, the good faith exception to the exclusionary rule adopted by the U.S. Supreme Court in United States v. Leon, 468 U.S. 897 (1984), under the Fourth Amendment); see Commonwealth v. Shaw, 476 Pa. 543, 555-56, 383 A.2d 496, 502 (1978).

22. Applying the foregoing analysis to the facts of this case demonstrates that the warrantless search of the Pepsi storage can neither be justified on grounds of a search incident to a valid

arrest as Corporal McDevitt had restrained the defendant sufficiently to remove any risk of a retrieval of a weapon from the gym bag and the Pepsi storage can itself is not incriminating or illegal.

23. Where Officer McDevitt did not expressly testify to any standardized inventory search procedure established by the Ridley Township Police Department, there can be no inference that the controlled substances and paraphernalia seized from inside the Pepsi storage container would have inevitably been discovered.

Wherefore, for all the foregoing reasons, Corporal McDevitt's search and seizure of the Pepsi storage can exceeded the reasonable scope of a permissible search incident to a valid arrest and where no other constitutionally permissible exception to the warrant requirement, all evidence of the controlled substances and paraphernalia contained in the Pepsi storage container shall be suppressed and any evidence of any kind pertaining to the aforementioned shall be excluded from trial in this matter.

BY THE COURT:

Richard M. Cappelli, Judge

FILED
2014 JUN 17 AM 10: 03
OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO. PA.