**COMMONWEALTH of Pennsylvania,
Appellee**

**v.**

**Waldemar CABAN, Appellant.**

**Commonwealth of Pennsylvania,
Appellee**

**v.**

**Yashera Renee Veras, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 1, 2012.
Filed Dec. 18, 2012.

Erv D. McLain, Bethlehem, for appellants.

Trudy G. Ladue, Assistant District Attorney, Clearfield, for Commonwealth, appellee.

BEFORE: BENDER, DONOHUE and STRASSBURGER *, JJ.

OPINION BY DONOHUE, J.:

Appellants, Waldemar Caban ("Caban") and Yashera Renee Veras ("Veras"), appeal from the judgments of sentence entered on May 25, 2011,[1] following their

---

* Retired Senior Judge assigned to the Superior Court.

1. These cases were consolidated on appeal pursuant to Pa.R.A.P. 513.

convictions by a jury of possession with intent to deliver a controlled substance, 35 P.S. § 780–113(a)(30); criminal conspiracy to commit possession with intent to deliver a controlled substance, 18 Pa.C.S.A. § 903(a)(2); and possession with the intent to use drug paraphernalia, 35 P.S. § 780–113(a)(32). For the reasons that follow, we affirm the judgments of sentence.

On March 11, 2010 at approximately 1:00 p.m., Trooper Justin Jones of the Pennsylvania State Police stopped a car being driven by Veras traveling west on Interstate 80 for speeding. N.T., 11/12/10, at 6–7. Upon approaching the vehicle, Trooper Jones asked Veras for her driver's license and the vehicle's registration and insurance cards. *Id.* at 7. While waiting for these items to be produced, he inquired about her destination, and when she could not answer, Caban, the passenger, interjected that they were going to a birthday party. *Id.* Veras then advised that the car belonged to Caban's father. *Id.* at 8. Trooper Jones observed a bottle of Fabreze in the back of the car, along with two canisters of what appeared to be perfume and several air fresheners.[2] *Id.* at 9.

Trooper Jones returned to his vehicle and prepared a citation for speeding. *Id.* at 8. He then pulled Veras from her car and asked her to step to its rear, at which time he gave her back her license and insurance card and told her that she was free to leave. *Id.* at 10. As Veras re-turned to her car, Trooper Jones asked if she would answer a few more questions. *Id.* Veras agreed, and Trooper Jones began to ask her more detailed questions about the birthday party (*e.g.*, the name of the boy, his age, and the name of his father). *Id.* Showing definite signs of nervousness, Veras did not know the boy's name, but said that he was a "toddler, maybe ten." *Id.* at 9, 11. She could not provide any information about his father. *Id.*

At this time, Veras indicated that she "was ready to go." *Id.* As she walked back to her car, Trooper Jones then told her to "hold tight" while he questioned Caban. *Id.* He then proceeded to ask Caban the same basic questions he had just asked Veras. *Id.* Caban told him that they were going to Dubois for a birthday party for the child of a friend named Wes, who he had known for a couple of years (although he could not remember his last name). *Id.* at 12. Trooper Jones then requested that Caban consent to a search the vehicle, but Caban denied the request. *Id.* Trooper Jones "then advised Caban that I could get a dog and laid his options out for him, told him I could get a dog or he could give the consent. . . ."[3] *Id.* at 12. Trooper Jones then returned to his vehicle to attempt to contact a K–9 unit in the area to do an air sniff of the vehicle. *Id.* at 13.

---

**2.** On cross-examination, Trooper Jones clarified that he saw two or three air fresheners. *Id.* at 19.

**3.** The line of questioning on this issue proceeded as follows:

Q. So what were the options that you outlined for Mr. Caban?

A. I just simply told Mr. Caban that there were two ways we could do this; he gives me consent to search the vehicle or we can call a dog, whichever he wants to do.

Q. Okay. So what you said to him was, we're seizing your car or you can give us consent?

A. The way it was stated was that he was free to go, he could give me consent to search the car, we'd search the car, they could be on their way—

Q. He was—

A.—or they were free to leave, I could get a dog, the car would be detained until a dog would arrive and do an air sniff of the vehicle.

*Id.* at 32.

As he returned to advise Caban of the expected time of the dog's arrival, Trooper Jones testified that he experienced the "overwhelming smell of marijuana." *Id.* at 29–30. Trooper Adam Gibson, who had since arrived at the scene, likewise clearly smelled marijuana. *Id.* at 51. After receiving confirmation from Trooper Gibson, Trooper Jones testified that Caban gave him consent to a search of the car:

I then asked Mr. Caban what the deal was, I can smell something, at which point he told me to search the vehicle, you won't find anything anyways. I asked Mr. Caban at this point, [a]re you giving me consent to search your vehicle? He said, [y]es, you won't find anything anyways.

*Id.* at 14–15. Trooper Jones then took the key from the ignition of the car and opened the trunk, at which time he discovered a two-foot deep by two-foot wide gift-wrapped box containing a large ball of marijuana wrapped in cellophane. *Id.* at 34; N.T., 3/17/11, at 52–53.

The trial court denied a motion to suppress the fruits of the search of the vehicle on constitutional grounds. The case proceeded to trial, at which time a jury convicted both Caban and Veras of the above-referenced crimes. The trial court imposed identical sentences for Caban and Veras: for possession with intent to deliver, a term of incarceration of three to six years; for criminal conspiracy to commit possession with intent to deliver, a concurrent term of incarceration of six months to two years; and for possession of drug paraphernalia, a concurrent term of one year of probation. The trial court also found both Caban and Veras to be eligible for an alternative minimum sentence/Recidivism Risk Reduction Incentive program, with alternative minimum sentences of 27 months.

Caban and Veras filed timely notices of appeal. Caban raises the following three issues for our consideration and determination:

1. Should the trial court have suppressed the evidence as a result of an illegal search and seizure by the police[.]

2. Was the consent to search the vehicle given by [Caban] legally operative[.]

3. Did the prosecution prove that [Caban and Veras] knowingly possessed the cellophane which is the basis of the drug paraphernalia charges[.]

Caban's Brief at 4. Veras raises these three issues as well as a fourth:

4. Did [Caban], a passenger, have legal power and authority to consent to a search of the automobile Veras was driving[.]

Veras' Brief at 5.

■ Except for the third issue, which raises a sufficiency of the evidence argument and thus will be addressed separately, the issues raised by Caban and Veras all depend upon the constitutionality of the search of the car resulting in the discovery of the marijuana. Accordingly, we will address these issues together. "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 874 A.2d 108, 115 (Pa.Super.2005).

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and

may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.*

■ Before considering the constitutionality of the search, we must first determine whether Caban and Veras have standing to suppress the search and a reasonable expectation of privacy. "The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution." *Commonwealth v. Powell,* 994 A.2d 1096, 1103 (Pa.Super.2010) (quoting *Commonwealth v. Hawkins,* 553 Pa. 76, 80, 718 A.2d 265, 266 (1998)). "[U]nder Pennsylvania law, a defendant charged with a possessory offense has standing to challenge a search." *Commonwealth v. Perea,* 791 A.2d 427, 429 (Pa.Super.2002), *appeal denied,* 568 Pa. 736, 798 A.2d 1288 (2002).

■ To prevail in a challenge to the search and seizure, however, a defendant accused of a possessory crime must also establish, as a threshold matter, a legally cognizable expectation of privacy in the area searched. *Commonwealth v. Strickland,* 707 A.2d 531, 534 (Pa.Super.1998), *appeal denied,* 556 Pa. 675, 727 A.2d 130 (1998) (quoting *Commonwealth v. Carlton,* 549 Pa. 174, 179–80, 701 A.2d 143, 145–46 (1997)); *see also Commonwealth v. Millner,* 585 Pa. 237, 257, 888 A.2d 680, 692 (2005) ("[I]t is clear that ... a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his ·own, personal privacy interests."). The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all of the surrounding circumstances. *Commonwealth v. Viall,* 890 A.2d 419, 422 (Pa.Super.2005).

In *Commonwealth v. Burton,* 973 A.2d 428 (Pa.Super.2009) (*en banc*), the defendant was stopped for a routine traffic violation. This Court concluded that he could not succeed in suppressing evidence seized from the vehicle he was driving since he "failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate." *Id.* at 436. More recently, in *Commonwealth v. Maldonado,* 14 A.3d 907 (Pa.Super.2011), this Court reversed a trial court's grant of a motion to suppress when the defendant failed to offer any evidence to demonstrate that he was authorized to use the vehicle. Although the vehicle belonged to his girlfriend, no evidence established that she had given him permission to use it on the day in question. *Id.* at 911.

■ In the present case, Caban and Veras were charged with possessory offenses, and thus both have automatic standing to move to suppress the evidence seized by police. With respect to a reasonable expectation of privacy, at the suppression hearing Veras and Caban did not offer any evidence to establish that they had permission to use the vehicle belonging to Caban's father. Because our standard of review requires that we consider the entire record on appeal, however, we also look to the evidence introduced at trial. There Caban testified that he borrowed the car from his father. N.T., 3/18/11, at 51, 69–70. Veras corroborated this testimony, further adding that both she and Caban regularly borrowed the car for a variety of purposes, and that Caban's father had no objection to them doing so long as they maintained it in a clean condi-

tion. *Id.* at 96–97. This testimony permits a reasonable inference that Caban and Veras were using the vehicle with the permission of its owner, and therefore had a sufficient possessory interest to establish a reasonable expectation of privacy in its contents.

■ Accordingly, we turn to the constitutionality of the search. The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution both protect against unreasonable searches and seizures. U.S. Const. amend. IV; Pa. Const. art. I, § 8; *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Cleckley,* 558 Pa. 517, 528, 738 A.2d 427, 433 (1999). A search conducted without a warrant is constitutionally impermissible unless an established exception applies. *Commonwealth v. Slaton,* 530 Pa. 207, 213, 608 A.2d 5, 8–9 (1992). A consensual search is one such exception, and the central inquiries in consensual search cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent, and the voluntariness of the consent given. *Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041; *Cleckley,* 558 Pa. at 528, 738 A.2d at 433. To establish a valid consensual search, the Commonwealth must first prove that the individual consented during a legal police interaction. *Commonwealth v. Strickler,* 563 Pa. 47, 57, 757 A.2d 884, 889 (2000). Where the underlying encounter is lawful, the voluntariness of the consent becomes the exclusive focus. *Id.; Commonwealth v. Acosta,* 815 A.2d 1078, 1083 (Pa.Super.2003) (*en banc*).

■ Pennsylvania case law recognizes three categories of interaction between police officers and citizens. The first is a "mere encounter," which need not be supported by any level of suspicion. *Acosta,* 815 A.2d at 1082. The second is

an "investigative detention," which must be supported by reasonable suspicion. *Id.* This interaction "subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest." *Commonwealth v. Phinn,* 761 A.2d 176, 181 (Pa.Super.2000) (citing *Commonwealth v. Ellis,* 541 Pa. 285, 293–94, 662 A.2d 1043, 1047 (1995)). The third category, a "custodial detention," must be supported by probable cause. *Id.* "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Hernandez,* 594 Pa. 319, 335, 935 A.2d 1275, 1284 (2007) (quoting *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185 (2004)).

In *Strickler,* our Supreme Court set forth a number of factors to assist in determining whether the interaction between a defendant and a police officer following the conclusion of a valid traffic stop is a mere encounter or an investigative detention:

(1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location and time of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) 'the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject to police restraint,' ... and (9) whether there was an express admoni-

tion to the effect that the citizen-subject is free to depart, which 'is a potent, objective factor.'

*Commonwealth v. Kemp*, 961 A.2d 1247, 1253 (Pa.Super.2008) (en banc) (citing and quoting *Strickler*, 563 Pa. at 75, 757 A.2d at 898–99). When an individual has been subjected to a valid detention but police then continue to engage the person in conversation, the person is less likely to believe that he is actually free to leave the scene. *Id.*

■ In the present case, Trooper Jones gave Veras a citation for speeding, returned her license and insurance card, and told her that she was free to leave. As Veras returned to her car, Trooper Jones asked if she would answer a few more questions. At the start, she answered the Trooper's questions, but then indicated that she "was ready to go." As she returned to her car, Trooper Jones told her to "hold tight" while he questioned Caban. Based upon this factual scenario, we conclude that Caban and Veras were subjected to an investigatory detention. To the extent that Trooper Jones renewed questioning of Veras began as a mere encounter based upon the *Strickler* factors, when Trooper Jones told her to "hold tight" he unquestionably made clear to her that she was not free to leave the scene. As our Supreme Court emphasized in *Strickler*, the threshold issue in distinguishing between a mere encounter and an investigatory detention is whether a reasonable person would have believed that she was free to leave, and to this end the inquiry must focus on whether the police officer, either by physical force or show of authority, has restricted the defendant's movement in some way. *Strickler*, 563 Pa. at 58–59, 757 A.2d at 889–90. When Trooper Jones informed Veras to "hold tight," he restricted her movements and

made clear that she was not free to leave the scene.

■ We also conclude, however, that the facts adduced by Trooper Jones by the time he told Veras to "hold tight" provided him with sufficient reasonable suspicion to justify the investigatory detention. To establish reasonable suspicion, the officer must "articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Basinger*, 982 A.2d 121, 125 (Pa.Super.2009) (quoting *Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa.Super.2002)). To determine whether the officer had reasonable suspicion, the totality of the circumstances must be considered. *In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In this regard, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Commonwealth v. Cook*, 558 Pa. 50, 57, 735 A.2d 673, 676 (1999) (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

In *Commonwealth v. Dales*, 820 A.2d 807 (Pa.Super.2003), this Court determined that reasonable suspicion did not exist to justify an investigatory detention after the completion of a valid traffic stop. The police officer stopped a vehicle after observing excessive tinting on the defendant's vehicle. The police officer noticed several air fresheners in the vehicle, both hanging from the rearview mirror and elsewhere in the interior of the car. He also smelled an aroma he associated with Bactine, but he could not definitively connect it to any particular controlled substance. The defendant appeared to be nervous, and when asked where he was

going, he responded that he was visiting a cousin in New York, although he had difficulty saying whether his cousin was a male or a female (eventually telling the officer that the cousin was a transsexual, a male dressed as a female). The police officer asked for consent to search the vehicle, and after the defendant gave his consent, the officer found a pound of crack cocaine in a duffel bag in the trunk. This Court ruled that the police officer did not have reasonable suspicion to proceed with an investigatory detention after the completion of the traffic stop. *Id.* at 813–14. Specifically, we held that "these facts were insufficient to establish anything more than a hunch of possible criminal activity being afoot." *Id.*

In a subsequent case, *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185 (2004), our Supreme Court found that a state trooper did have reasonable suspicion to subject the defendant to an investigatory detention. In *Rogers,* the defendant exhibited extreme nervousness during a valid traffic stop. He informed the trooper that he was returning from visiting a friend, but he could not provide the trooper with his friend's name. He also produced paperwork documenting the ownership of the car by a third party not present in the vehicle, but the paperwork was incomplete and contained information that he admitted was false. The trooper observed open boxes of laundry detergent, fabric softener, and packaging tape that the trooper, based on his experience, understood to be masking agents and packaging supplies commonly used in the distribution of controlled substances. Based upon the trooper's observations, our Supreme Court ruled that "[t]hese facts, taken in their totality, lead to a conclusion that that [the trooper] had reasonable suspicion to suspect that criminal activity was afoot." *Id.* at 135, 849 A.2d at 1190.

Finally, in *Commonwealth v. Kemp,* 961 A.2d 1247 (Pa.Super.2008) (*en banc*), a state trooper stopped a vehicle with heavily-tinted windows. Upon approaching the car, the trooper observed and smelled the heavy odor of masking agents, including air fresheners and dryer sheets. The defendant, who was a passenger in the vehicle, was extremely nervous and could not provide "clarifying answers to questions." *Id.* The defendant informed the trooper that the owner of the vehicle was a person with the last name "Lee", but a computer search revealed that it was owned by Lanika Paolucci. *Id.* Based upon *Rogers,* an *en banc* panel of this Court determined that the trooper had reasonable suspicion to continue a detention beyond the traffic stop. *Id.* at 1255. In particular, we noted the presence of masking agents, third-party ownership of the vehicle, the defendant's nervousness and inability to provide correct information, and the detection of an odor of marijuana. *Id.*

■ Based upon *Rogers* and *Kemp,* we conclude that Trooper Jones adduced sufficient facts to establish reasonable suspicion that criminal activity was afoot in this case. The car was owned by a third party not present in the vehicle, Veras acted nervously, the answers provided by Veras and Caban to basic questions regarding their destination were inconsistent, and various masking agents, including air fresheners, canisters of perfume, and a bottle of Fabreze, were present in the vehicle. When considering the totality of the circumstances, we need not limit our inquiry to only those facts that clearly and unmistakably indicate criminal conduct. *Id.* Instead, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Id.* (quoting *Cook,* 558 Pa. at 57, 735 A.2d at 676).

Having determined that Trooper Jones had reasonable suspicion to justify his investigatory detention, we turn to the issues raised in connection with the consent to search subsequently provided by Caban. Veras contends that Caban, as a passenger, lacked the "capacity and authority" to consent to a search of the vehicle.[4] Veras' Brief at 9. Caban alternatively argues that his consent to search was not voluntarily given, but rather was coerced by Trooper Jones.

Veras contends that Caban, as a mere passenger in the vehicle, lacked the capacity and authority to consent to the search. In particular, Veras argues that Caban, as a passenger not in control of the vehicle, lacked a reasonable expectation of privacy in its contents, including both its interior and the trunk. Veras posits that a line of Pennsylvania cases, including *Commonwealth v. Millner*, 585 Pa. 237, 888 A.2d 680 (2005), and *Commonwealth v. Powell*, 994 A.2d 1096 (Pa.Super.2010), establish that passengers do not have a legitimate expectation of privacy that "society is willing to respect." Veras' Brief at 13.

■ For the reasons set forth hereinabove, we have concluded that Caban, after borrowing the car from his father, did have a reasonable expectation of privacy sufficient to challenge the validity of the search in this case. *See supra* at 9. We likewise disagree with Veras' contention that the distinction between automobile drivers and passengers plays any important role in determining whether a reasonable expectation of privacy exists in a particular case. In *Millner* and *Powell*, for example, the defendants both failed to establish any interest whatsoever in the vehicle in question. *Millner*, 585 Pa. at 257, 888 A.2d at 692 ("[Millner] produced no evidence that he owned the vehicle, nor did he produce evidence which remotely suggested that he had any other connection to the vehicle which could form the basis for so much as a subjective expectation of privacy."); *Powell*, 994 A.2d at 1107 ("In the present case, Powell submitted no evidence at the suppression hearing to demonstrate that he had any privacy interest in the trunk of the vehicle in which he was a passenger.... Powell had no connection to the vehicle whatsoever."). As such, it was the lack of any ownership or other proprietary or possessory interest in the vehicle, rather than the fact that the defendants were passengers, that resulted in a finding of an absence of a reasonable expectation of privacy.

■ Turning to Caban's argument that his consent to search was coerced, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Strickler*, 563 Pa. at 79, 757 A.2d at 901. The inquiry is ultimately objective, and employs a reasonable person test presupposing an innocent person. *Strickler*, 563 Pa. at 79, 757 A.2d at 901. "The test for the

4. Veras also argues that this Court's recent decision in *Commonwealth v. Joseph*, 34 A.3d 855 (Pa.Super.2011) has some applicability in this case. Other than to state that *Joseph* is "factually similar" to the present case, however, Veras offers no explanation as to how our *Joseph* decision should apply here—including no discussion of what points of law we reached in *Joseph* have any applicability in the present context. Accordingly, we are constrained to find this argument to be waived on appeal. *See, e.g., Commonwealth v. Brewington*, 740 A.2d 247, 252 n. 2 (Pa.Super.1999) (argument asserted but not developed is waived, as this Court "will not make appellant's arguments for him"), *appeal denied*, 563 Pa. 626, 758 A.2d 660 (2000).

validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8, *i.e.*, that the consent is given voluntarily." *Commonwealth v. Mack*, 568 Pa. 329, 334, 796 A.2d 967, 970 (2002).

In reviewing the totality of the circumstances, Pennsylvania courts have considered a variety of factors to assess the voluntariness of the consent, including the length and location of the detention; whether there were any police abuses, physical contact, or use of physical restraints; any aggressive behavior or any use of language or tone by the officer that were not commensurate with the circumstances; whether the questioning was repetitive and prolonged; whether the person was advised that he or she was free to leave; and whether the person was advised of his or her right to refuse to consent. *See, e.g., Strickler*, 563 Pa. at 79, 757 A.2d at 898–902; *Mack*, 568 Pa. at 329, 336, 796 A.2d at 971–72. No one factor in the voluntariness inquiry is controlling. *Strickler*, 563 Pa. at 79, 757 A.2d at 898–902.

■ In assessing these factors, it is clear Trooper Jones did not coerce Caban's consent in this case. The investigatory detention took place in an open location, on an exit ramp of a public highway, during the middle of the day (around 1:00 p.m.). Caban does not contend that the detention was exceedingly long or that Trooper Jones' questioning was repetitive or deceptive in any way. The record on appeal does not indicate that there were any police abuses, aggressive tactics, physical contact, or the use of physical restraints any time during the detention. Caban was advised that he was free to leave, and while not specifically advised by Trooper Jones, Caban undoubtedly knew that he had the right to refuse to consent because he initially did so (which refusal Trooper Jones accepted without argument).

■ Instead, Caban argues that Trooper Jones' statement that the car would be detained until the drug-sniffing dog arrived unless he consented to the search placed undue pressure on him.[5] We disagree that this is coercion. Trooper Jones merely explained Caban's options to him, and Caban remained free to refuse to consent and wait for the dog (or leave the scene). While Trooper Jones' indication that he was going to have a dog sniff the vehicle required Caban to make a decision regarding what he should do, we do not consider it to have been overly coercive. Moreover, this consideration is at most one

---

**5.** We note that Trooper Jones' decision to detain the vehicle while waiting for the arrival of a drug-sniffing dog was needless under the circumstances presented. Since Trooper Jones and Trooper Gibson had both clearly smelled the odor of raw marijuana emanating from the trunk of the vehicle, the troopers already had probable cause to believe that a drug-related crime was being committed. As such, a positive reaction from a drug-sniffing dog was unnecessary, as probable cause already existed.

The existence of probable cause would not have provided Trooper Jones with the authority to search the trunk of the vehicle or to open the package contained therein. *Commonwealth v. Hernandez*, 594 Pa. 319, 935 A.2d 1275 (2007) ("Warrantless vehicle searches in this Commonwealth must be accompanied not only by probable cause, but also by *exigent circumstances* beyond mere mobility; one without the other is insufficient."). The existence of probable cause would have, however, provided Trooper Jones with a basis to detain the vehicle while attempting to obtain a warrant to conduct the search. *See, e.g., Commonwealth v. Joseph*, 34 A.3d at 862 (seizure of a vehicle for an indeterminate amount of time while the police obtain a warrant is constitutionally justified only if probable cause exists).

In the present case, Caban's consent to conduct the search eliminated the need to obtain a warrant.

factor in the "totality of the circumstances" analysis. *See Mack*, 568 Pa. at 335, 796 A.2d at 971 ("[T]he statement by police that they 'would have to get a search warrant' is merely a factor, but not a dispositive one, in the totality of the circumstances that a court must review in determining whether the police coerced the individual into consenting to the search."). Weighing all of the relevant factors here, we disagree with Caban that his consent to search was not voluntarily provided in this case.

■ As their final issue on appeal, Caban and Veras contend that the Commonwealth failed to introduce sufficient evidence to support the paraphernalia conviction. 35 P.S. § 780–113(a)(32) prohibits

> [t]he use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780–113(a)(32). Caban and Veras apparently concede that the cellophane used for packing the marijuana is the use of paraphernalia as defined in the statute. While not entirely clear,[6] Caban and Veras appear to be arguing that the cellophane in which the marijuana was wrapped was not visible from the outside of the gift-wrapped box, and the Commonwealth did not prove that either of them had ever looked inside the box prior to Trooper

Jones' opening of the box at the scene. In other words, they could not have possessed the drug paraphernalia in the box if they did not know what was in the box. Caban's Brief at 26–28.

■ Our standard of review for a sufficiency of the evidence claim is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

6. Alternatively, Caban and Veras could be arguing that the cellophane is a "fruit of the poisonous tree," *i.e.*, because Trooper Jones' search of the trunk and the contents of the box were illegal, the evidence inside the box (including the cellophane) must be suppressed. We will not address this argument further, as we have already determined that the search of the trunk and the box were legal and constitutional.

*Commonwealth v. Quel,* 27 A.3d 1033, 1037–38 (Pa.Super.2011).

In this case, the jury convicted Caban and Veras of knowingly possessing the marijuana in the box with the intent to deliver it. They do not challenge this conviction. As a result, the jury, as was its province based upon the evidence presented at trial, determined that Caban and Veras knew the entirety of the contents of the box. Therefore, the jury could reasonably have inferred that Caban and Veras knew not only of the marijuana in the box but also of the other contents of the box— including the cellophane in which the marijuana was wrapped. Moreover, as the Commonwealth correctly points out, the jury was also entitled to conclude that the box itself (gift-wrapped to appear to be a birthday present) was a form of drug paraphernalia prohibited by section 780– 113(a)(32), as it constituted packaging intended to conceal the existence of controlled substances. For these reasons, this argument has no merit.

Judgments of sentence affirmed.