J-S33005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RACHEL ELIZABETH STIGER | : | |
| | : | |
| Appellant | : | |
| | : | No. 228 WDA 2015 |

Appeal from the Judgment of Sentence January 9, 2015
in the Court of Common Pleas of Allegheny County Criminal Division
at No(s): CP-02-CR-0005651-2014

BEFORE: GANTMAN, P.J., OLSON, J., AND FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MAY 05, 2016**

Appellant, Rachel Elizabeth Stiger, appeals from the judgment of sentence imposed in the Allegheny County Court of Common Pleas following her convictions for two counts of driving under the influence ("DUI")[1] and one count of failure to stop at a red signal.[2] Appellant argues the Port Authority officer did not have authority to stop Appellant's vehicle, she was arrested without probable cause, and the Commonwealth unlawfully obtained a blood sample in the absence of a warrant. We affirm.

On December 8, 2013, Officer Dominic Ravotti, of the Port Authority of Allegheny County Police Department, arrested Appellant for DUI. On August

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1), (c).

[2] 75 Pa.C.S. § 3112(a)(3)(i).

19, 2014, Appellant filed an omnibus pretrial motion alleging Officer Ravotti exceeded his "limited jurisdiction" when he stopped her, he did not have the requisite reasonable suspicion or probable cause to stop Appellant, and he unlawfully coerced her consent to have her blood drawn. Omnibus Pre-Trial Mot., 8/19/14, at 3-8. The trial court held a hearing on October 10, 2014, at which the only evidence introduced was the testimony of Officer Ravotti. We summarize the salient facts from the hearing as follows.

At the time of the hearing, Officer Ravotti had been a police officer for ten years and employed by the Port Authority of Allegheny County Police Department for one year. N.T. Suppress Hr'g, 10/10/14, at 4. He is dually certified as a railway officer and through the Municipal Officer's Education and Training Commission. *Id.* at 4-5. He described his duties as a Port Authority officer:

> As an officer for Port Authority we are to patrol and protect all Port Authority property, all Port Authority bus routes, light rail transit routes and [] bus stops and whatnot . . . [D]epending on the hours of the day we do different duties. On a daylight shift, it's more the downtown area with the large amount of traffic downtown. On midnight we are put more towards checking on bus shelters due to a large amount of vandalism and people sleeping in bus shelters and keeping – setting up homes in basically shelters so that people can use our shelters correctly whenever morning comes.

*Id.* at 5.

On December 8, 2013, Officer Ravotti was "patrolling the Liberty Avenue area" in Pittsburgh checking multiple bus stops and shelters along

that road.[3] *Id.* at 6. He testified there is a busway ramp at Liberty Avenue and 16th Street. *Id.* He recounted what drew his attention to Appellant:

> That night I was stopped at a traffic light on 16th Street at Liberty Avenue, I was behind another private auto. I noticed our light turn green; the private auto kept on to travel and turned outbound onto Liberty Avenue. At that time the vehicle got about halfway into the intersection and had to come to a complete stop. At that time I had to come to a complete stop almost striking the vehicle in front of me. I noticed a green colored Subaru traveling outbound on Liberty Avenue go through a steady red signal.

*Id.*

Officer Ravotti then activated his emergency lights and effected a traffic stop. *Id.* at 6-8. When he approached the vehicle, Officer Ravotti observed that Appellant, the driver of the vehicle, had bloodshot, glassy eyes, detected an odor of alcohol, and noticed Appellant's speech was "slurred." *Id.* at 9. Appellant admitted she had consumed alcohol. *Id.* Officer Ravotti requested that Appellant perform field sobriety tests. *Id.* Appellant was "unsteady" as she left her vehicle and "was having a hard time standing still." *Id.* at 10. Officer Ravotti asked Appellant to recite the "ABCs" beginning with "C." *Id.* Appellant began by reciting "A," stopped on a letter twice, and "slurred a couple letters." *Id.* Officer Ravotti then asked

---

[3] Officer Ravotti indicated there is a bus stop at approximately every block and a bus shelter approximately every other block along Liberty Avenue. N.T. at 6.

Appellant to complete "the finger touch test." *Id.* He demonstrated how to perform the task for Appellant; however, when she attempted, she counted incorrectly and used the wrong fingers. *Id.* at 10-11. Lastly, Officer Ravotti asked Appellant to perform "the nose touch test;" Appellant missed her nose and used the wrong hand on two of her attempts. *Id.* Officer Ravotti determined Appellant failed all three tests and arrested her for DUI. *Id.* at 9, 11.

Officer Ravotti transported Appellant to Allegheny General Hospital for a blood test. *Id.* at 11. He testified Appellant consented to the blood draw. *Id.* at 12. He specifically noted he reviewed with Appellant the PennDOT DL-26 form,[4] which he and Appellant signed, and she signed a separate hospital consent form.[5] *Id.* at 12-13. Appellant had a blood alcohol content ("BAC") of .184%. *Id.* at 14.

The trial court permitted the parties to file memoranda and heard oral arguments on November 21, 2014. The court denied the motion to suppress, and Appellant proceeded to a stipulated nonjury trial at which she was found guilty of the aforementioned offenses.[6] On January 9, 2015, the

---

[4] *See* 75 Pa.C.S. § 1547.

[5] We note the DL-26 form and the hospital consent form were admitted without objection into evidence. However, they do not appear in either the certified or the reproduced record.

[6] The trial court acquitted Appellant of careless driving, 75 Pa.C.S. § 3714(a).

court sentenced Appellant to ninety days of intermediate punishment and a concurrent term of eighteen months' probation for DUI—highest rate of alcohol. Sentencing Order, 1/9/15. The court granted Appellant's request for bail pending appeal.

Appellant filed a timely notice of appeal on February 6, 2015, and a court-ordered Pa.R.A.P. 1925(b) statement on March 10, 2015. The trial court authored a responsive opinion.

On appeal, Appellant raises the following issues:

> A. Whether or not Port Authority Officer Ravotti had the jurisdictional authority under the Railroad and Street Railway Police Act, 22 Pa.C.S.A. § 3303(a), to perform a traffic stop of [] Appellant's vehicle while she was driving on a public highway, not a roadway that was used exclusively for Port Authority vehicles?
>
> B. Whether or not there was probable cause to arrest [Appellant] for the offense of DUI when Port Authority Officer Ravotti did not administer standardized field sobriety tests but instead, relied on arbitrary testing that has not been standardized or associated with alcohol impairment on any scientific level?
>
> C. Whether or not [Appellant] was subjected to an unlawful search and seizure of her blood when the Port Authority officer failed to obtain a search warrant before conducting a blood draw?

Appellant's Brief at 4.

Appellant first argues that "Officer Ravotti was not acting within his primary jurisdiction for the Port Authority when he stopped Appellant's vehicle." *Id.* at 11. She contends the intersection where the stop occurred

- 5 -

was a public highway, and the evidence did not establish that the intersection is "in the immediate and adjacent vicinity of Port Authority Property." *Id.* at 12. She argues further that Officer Ravotti did not have extraterritorial jurisdiction. *Id.* at 15. Appellant reasons that because no bus service was running at the time, "then the bus stops and shelters were empty and no passengers were present." *Id.* Moreover, she contends there was insufficient evidence to establish her conduct placed Port Authority personnel, property, or passengers in jeopardy. *Id.* at 16. Appellant posits that affirming the trial court "will permit Port Authority police to patrol throughout the county under the ruse that they are checking bus shelters." *Id.* at 18. We disagree.

Our standard of review is well settled.

> An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that an appellate court is not bound by the suppression court's conclusions of law.
>
> * * *
>
> In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing.

*Commonwealth v. Caple*, 121 A.3d 511, 517-18 (Pa. Super. 2015) (citations and footnote omitted).

Further, it is within the sole province of the suppression court to determine the credibility of witnesses and the weight to afford testimony. *Commonwealth v. Angel*, 946 A.2d 115, 117 (Pa. Super. 2008).

The power of Port Authority officers is codified at 22 Pa.C.S. § 3303 and provides, in relevant part:

> **(a) General powers.—**Railroad and street railway policeman shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon and in the immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.

22 Pa.C.S. § 3303(a).

Our Supreme Court noted, "the Act plainly includes aspects of both primary or derivative jurisdiction . . . and a distinct, direct grant of extraterritorial authority . . . ." *Commonwealth v. Firman*, 813 A.2d 643, 647 (Pa. 2002). The Court acknowledged:

> by conditioning the grant of extraterritorial jurisdiction on engagement in the discharge of duties in pursuit of transportation system business, the General Assembly intended to require a closer connection between the interests of the transportation system and encounters in which police powers are to be exercised than mere "on-duty" status of transportation system police on the observation of offenses.

*Id.*

The Court held the following situation creates a sufficient connection enabling an officer to exercise extraterritorial jurisdiction:

> **In circumstances in which a motorist's conduct on a public highway jeopardizes Port Authority personnel, property, or passengers (here the transportation system officer and the authority vehicle that he was operating), we conclude that a sufficient connection to transportation system business arises such that extrajudicial jurisdiction of Port Authority policeman is implicated**. Once police power is so enabled, absent a sufficient break in the encounter, its exercise may continue through an investigatory stop and/or arrest, where otherwise warranted.

*Id.* at 648 (emphasis added and footnote omitted).

Instantly, the uncontradicted testimony of Officer Ravotti established that while he was on duty and driving toward an intersection on a public roadway, with a green traffic light, Appellant drove through a steady red light on the intersecting road. N.T. at 6. His unrebutted testimony further demonstrated he was patrolling bus stations and shelters to protect them from vandalism and unauthorized occupants and ensure they were in good order for morning commuters. *Id.* at 5; *accord* 22 Pa.C.S. § 3303(a). While discharging his duties, Appellant's traffic violation caused the vehicle directly in front of Officer Ravotti to come to an abrupt stop in the middle of the intersection and forced him to bring his vehicle to a complete stop to avoid an accident with said vehicle. N.T at 5. Accordingly, we conclude the suppression record amply supports the trial court's determination, and we

discern no legal error.[7]  ***See Caple***, 121 A.3d at 517-18; ***Firman***, 813 A.2d 648.

Moreover, in light of the facts of this case, *i.e.*, Appellant's actions causing a disturbance in traffic and a near-accident between Officer Ravotti and another motorist, we are unpersuaded by Appellant's policy argument that our ruling will permit Port Authority officials from patrolling beyond their jurisdiction under the ruse of checking bus shelters.  ***See*** Appellant's Brief at 18.  The ***Firman*** Court clarified that a Port Authority officer's extraterritorial jurisdiction is properly invoked when a motorist's conduct jeopardizes Port Authority personnel, property, or passengers, as Appellant's actions in this case did.  ***See Firman***, 813 A.2d at 648.

Next, Appellant contends there was no probable cause to arrest her for DUI because the field sobriety exercises Officer Ravotti asked Appellant to perform "are not standardized or associated with alcohol impairment on any scientific level."  Appellant's Brief at 18.  She argues, "the information gathered from these tests is untrustworthy and does not provide an objective basis to establish probable cause" and that without consideration

---

[7] We note the trial court relied primarily on Officer Ravotti's testimony that there were bus stops every block and bus shelters every other block in determining he exercised primary jurisdiction.  Trial Ct. Op., 7/8/15, at 3 (unpaginated).  Although our reasoning differs than the trial court's, we agree Officer Ravotti was acting within his jurisdiction.  Furthermore, we may affirm on any basis.  ***Commonwealth v. Clouser***, 998 A.2d 656, 661 n. 3 (Pa. Super. 2010).

of Officer Ravotti's testimony, the trial court could not find there was probable cause to arrest. *Id.* at 21, 23. Appellant is due no relief.

This Court has explained:

> [p]robable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance. Additionally, [p]robable cause justifying a warrantless arrest is determined by the totality of the circumstances. Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.

*Angel*, 946 A.2d at 118 (citations and quotation marks omitted).

Viewing the uncontradicted evidence presented by the Commonwealth, under the totality of the circumstances, Officer Ravotti had knowledge of sufficient facts and circumstances to warrant the belief that Appellant had been driving under the influence of alcohol. *See Freeman*, 128 A.3d at 1240; *Angel* 946 A.2d at 118. After stopping Appellant, Officer Ravotti detected classic signs of intoxication, *i.e.*, odor of alcohol, Appellant's glassy eyes and slurred speech. N.T. at 9; *see Angel*, 946 A.2d at 118. Appellant admitted to Officer Ravotti she had consumed alcohol, she was unsteady on her feet, and she was unable to follow his instructions. N.T. at 9-11. Specifically, she was unable to recite the alphabet as instructed, unable to touch her fingers to her thumb according to Officer Ravotti's direction and after he modeled how to perform the task, and she was unable to touch her nose as instructed. *Id.* Appellant asks this Court to reassess the officer's

credibility and reweigh his testimony. *See* Appellant's Brief at 23 ("[t]he trial court's finding . . . is based on the weight given to the unvalidated exercises"). Pursuant to our standard of appellate review over suppression challenges, we decline to do so. *See Angel*, 946 A.2d at 117. Accordingly, the record supports the trial court's ruling, and we discern no error of law. *See Caple*, 121 A.3d at 517-18.

For Appellant's last issue, she argues the blood sample the Commonwealth tested to determine her BAC was taken without a warrant in "contravention" of her constitutional rights. Appellant's Brief at 24. She relies on this Court's decision in *Commonwealth v. Myers*, 118 A.3d 1122 (Pa. Super. 2015), *appeal granted*, 131 A.3d 480 (Pa. 2016), "for the proposition that the implied consent statute does not provide the actual consent that is necessary to obtain a chemical result and it is not an exception to the warrant requirement." *Id.* at 27. She posits that there was "no exception to the warrant requirement" present in this case. *Id.* at 28. We find Appellant's reliance on *Myers* misplaced.

The administration of a blood test is a search under the Fourth Amendment of the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Kohl*, 615 A.2d 308, 312, 315 (Pa. 1992).

> A search conducted without a warrant is constitutionally impermissible unless an established exception applies. A consensual search is one such exception, and the central inquiries in consensual

- 11 -

> search cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent, and the voluntariness of the consent. . . . Where the underlying encounter is lawful, the voluntariness of the consent becomes the exclusive focus.

*Commonwealth v. Caban*, 60 A.3d 120, 127 (Pa. Super. 2012).

In **Myers**, the defendant was arrested on suspicion of DUI and transported to the hospital. **Myers**, 118 A. 3d at 1124. The police officer who responded to the hospital observed the defendant unconscious and unresponsive. **Id.** After attempts to have Appellant respond to the officer were unsuccessful, the officer read the "standard informed consent warnings" to the unconscious defendant. **Id.** The defendant never signed consent warnings, and no warrant for the defendant's blood was secured; however, the police officer obtained a warrantless blood sample from the defendant. **Id.**

The defendant sought suppression in the Municipal Court based on, *inter alia*, the warrantless draw of his blood. **Id.** The Municipal Court granted the suppression motion with respect to the blood because it concluded the defendant was unconscious and could not consent, and "it was not unreasonable" for the Commonwealth to obtain a warrant under the circumstances. **Id.** at 1124-25. The Philadelphia Court of Common Pleas affirmed the ruling, and the Commonwealth appealed to this Court. **Id.** at 1125. This Court acknowledged that defendant's case was unique because the defendant did not have an opportunity to refuse the blood draw:

> Pennsylvania's implied consent statute provides a driver under arrest with the statutory right of refusal to blood testing, see 75 Pa.C.S. § 1547(b)(1) ("If any person placed under arrest for a violation of Section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted. . . ."). As discussed, Section 1547 provides for chemical testing when consent is not withdrawn pursuant to subsection (b)(1), and precludes a blood draw when consent is withdrawn and imposes penalties. Here, [the defendant] was arrested for DUI and transported to the hospital, but was not given the applicable warnings until a later time, at which point he could not claim the statutory protection of Section 1547(b)(1).

*Id.* at 1129 (footnote omitted). We affirmed the suppression court's determination concluding the defendant could not refuse testing or consent to the blood test and exigent circumstances did not excuse the warrantless blood draw.[8]

As discussed *supra*, there was probable cause supporting Appellant's arrest. Therefore, our task is limited to evaluating the voluntariness of her consent. *See Caban*, 60 A.3d at 127. Officer Ravotti testified Appellant consented to the blood draw, he went over the implied consent form with Appellant, both the officer and Appellant signed the form, and Appellant signed a separate hospital consent form. N.T. at 12-13. There is no

---

[8] We found the case was controlled by the United States Supreme Court decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), which held "in drunk-driving investigations, **the natural dissipation of alcohol does not constitute an exigency in every case** sufficient to justify conducting a blood test without a warrant." *Myers*, 118 A. 3d at 1130 (discussing *McNeely*, 133 S. Ct. at 1568).

evidence of record to suggest Appellant was unable to consent like the defendant in **Myers** or that Officer Ravotti coerced Appellant's consent. Rather, the uncontradicted evidence presented at the suppression hearing was that Appellant consented, following her arrest, to having her blood drawn. **Id.**; **see Freeman**, 128 A.3d at 1240  Appellant's suggestion that the trial court relied solely on the signed consent forms as evidence of her consent is not supported by the record.  Thus, we conclude the record supports the trial court's finding that Appellant consented, and therefore, her suppression motion was properly denied. **See Caple**, 121 A.3d at 517-18.

Based on the foregoing, we affirm.

Judgement of sentence affirmed.

Gantman, P.J. joins the Memorandum.  Olson, J. Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2016