J-S84040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RAYMOND CHARLES CANTWELL, JR. | |
| Appellant | No. 1248 EDA 2016 |

Appeal from the Judgment of Sentence March 23, 2016
in the Court of Common Pleas of Bucks County Criminal Division
at No(s): CP-09-CR-0007644-2015

BEFORE: OLSON, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED NOVEMBER 16, 2016**

Appellant, Raymond Charles Cantwell, Jr., appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following a jury trial[1] and his conviction for retail theft.[2]  Appellant contends the evidence was insufficient to convict him of retail theft.  We affirm.

The trial court summarized the facts of this case as follows:

> On November 25, 2015, [Appellant] was observed on video surveillance selecting several items from the shelves of the Home Depot . . . by John Baran, the store's head of loss prevention.  When he was first observed, [Appellant] had an item identified as a "mailbox in a box" in his shopping cart.  [Appellant] was seen entering what was identified as the "tool corral" of the store, the area where

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that the notes of testimony from the jury trial are erroneously dated March 22, 2014.

[2] 18 Pa.C.S. § 3929(a)(1).

the high-priced tools and related items are displayed. [Appellant] selected two items, a Milwaukee brand power tool valued at $79 and Milwaukee brand batteries for power tools valued at $99, and placed them in his cart. After observing what he believed to be suspicious behavior, Mr. Baran then began to follow [Appellant] as he moved around the store. In Aisle 12, [Appellant] selected a thermostat from a shelf and placed it in his cart. He then moved down Aisle 11 and proceeded to the garden department. While there, [Appellant] took the Milwaukee batteries from his cart and attempted to remove the security sensor from the Milwaukee batteries. He was unsuccessful. He then placed both of the Milwaukee products that he had in his possession in his jacket, zipped the jacket approximately three quarters of the way up and moved into the greenhouse section of the garden department. When Mr. Baran followed, [Appellant] walked behind a large cart of plants, removed the items from his jacket and placed them on the shelf among the plants. He then proceeded to the cashier at the exit of the garden department and paid for the mailbox in the box. The thermostat that [Appellant] had previously placed in the cart was no longer present and was never located. After [Appellant] left the store, Mr. Baran identified himself and asked [Appellant] to return to the store. [Appellant] was initially confrontational and refused to comply. He then attempted to flee on foot. Mr. Baran then retrieved the two power tool items concealed in the greenhouse and called the police. While Mr. Baran and [Appellant] waited for the police to arrive, [Appellant] told Mr. Baran that he never picked up any Milwaukee products. He later offered to pay for those items.

Trial Ct. Op., 6/21/16, at 1-2 (footnotes omitted).

Appellant was sentenced to one to two years' imprisonment. This timely appeal followed. Appellant filed a court ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion.

Appellant raises the following issue for our review:

A. Whether the evidence was sufficient to prove the Appellant guilty of retail theft beyond a reasonable doubt where the Commonwealth did not prove that Appellant did take possession of, carry away, transfer or cause to be carried away or transferred, merchandise displayed, held stored or offered for sale by Home Depot with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying full retail value.[3]

Appellant's Brief at 4.

Appellant argues the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of retail theft because he lacked "the requisite intent to deprive the merchant of any items." Appellant's Brief at 11.[4] He avers the Commonwealth failed to establish that Appellant had "the

---

[3] Appellant did not file post-sentence motions. However, challenges to the sufficiency of the evidence can be raised for the first time on appeal. **See** Pa.R.Crim.P. 606(A)(7).

[4] We consider whether Appellant also challenges the weight of the evidence. Appellant contends that "[t]he Commonwealth's evidence presented through the loss prevention employee is incredible and unbelievable." Appellant's Brief at 13.

In **Commonwealth v. DeJesus**, 860 A.2d 102 (Pa. 2004), the Pennsylvania Supreme Court opined:

The [a]ppellant's claim challenges the weight, not the sufficiency, of the evidence. The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. **Questions concerning inconsistent testimony** . . . **go to the credibility of the witnesses**. This Court cannot substitute its judgment for that of the jury on issues of credibility.

**Id.** at 107 (citations omitted and emphases added). Instantly, Appellant argues the testimony of the Commonwealth's witness was not credible. **See**

- 3 -

intent to permanently deprive the merchant of the value of the merchandise concealed on his person." *Id*. at 13.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

> As this case involves a question of law, our scope of review is plenary. Our standard of review is de novo.
>
> \* \* \*
>
> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict. . . .
>
> \* \* \*
>
> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

---

*id.* Appellant, however, failed to raise his weight claim before the trial court; therefore, he has waived it on appeal. ***See*** Pa.R.Crim.P. 607(A); ***Commonwealth v. Sherwood***, 982 A.2d 483, 494 (Pa. 2009) (holding weight claim waived where the "[a]ppellant did not make a motion raising a weight of the evidence claim before the trial court as the Pennsylvania Rules of Criminal Procedure require"). Appellant did not raise a weight of the evidence claim in his Rule 1925(b) statement, and thus, he waived the claim. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (holding "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.)

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1235-36, 1237 (Pa. 2007)

(citations and quotation marks omitted). "The Commonwealth may sustain

its burden of proving every element of the crime beyond a reasonable doubt

by means of wholly circumstantial evidence." *Commonwealth v. Caban*,

60 A.3d 120, 132 (Pa. Super. 2012) (citation omitted).

Section 3929 of the Crimes Code defines retail theft:

> **(a) Offense defined.**—A person is guilty of a retail theft if
> he:

> (1) takes possession of, carries away, transfers or
> causes to be carried away or transferred, any
> merchandise[5] displayed, held, stored or offered for
> sale by any store or other retail mercantile
> establishment with the intention of depriving the
> merchant of the possession, use or benefit of such
> merchandise without paying the full retail value
> thereof[.]

18 Pa.C.S. § 3929(a)(1). There is a presumption that

> [a]ny person intentionally concealing[6] unpurchased
> property of any store or other mercantile establishment,
> either on the premises or outside the premises of such
> store, shall be *prima facie* presumed to have so concealed
> such property with the intention of depriving the merchant
> of the possession, use or benefit of such merchandise
> without paying the full retail value thereof within the
> meaning of subsection (a), and the finding of such
> unpurchased property concealed, upon the person or

---

[5] Merchandise is defined as follows: "Any goods, chattels, foodstuffs or wares of any type and description, regardless of the value thereof." 18 Pa.C.S. § 3929(f).

[6] The term conceal is statutorily defined as follows: "To conceal merchandise so that, although there may be some notice of its presence, it is not visible through ordinary observation." *Id.*

- 5 -

among the belongings of such person, shall be *prima facie* evidence of intentional concealment, and, if such person conceals, or causes to be concealed, such unpurchased property, upon the person or among the belongings of another, such fact shall also be *prima facie* evidence of intentional concealment on the part of the person so concealing such property.

*Id.* § 3929(c). "If a person conceals merchandise either in a store or outside of it, without first having paid for it, it reasonably follows that he intends to deprive the merchant of the item(s)." **Commonwealth v. Martin**, 446 A.2d 965, 968 (Pa. Super. 1982).

In **Commonwealth v. Jones**, 528 A.2d 1360 (Pa. Super. 1987), this Court found the defendant had the intent to deprive the merchant of certain items. The **Jones** Court opined:

The evidence received at trial established that [the defendant] concealed the unpurchased meat under his coat. The Commonwealth's witness testified that he observed appellant picking up two or three pieces of meat and that when he started following appellant down the aisle, appellant had already "put the meat inside his coat and his coat was maybe zipped halfway up." The witness then described appellant as having "a big bulge you could see" under his coat. From this testimony, the trial court could presume that appellant harbored the requisite intent.

*Id.* at 1362 (citations omitted). "Further, [f]light does indicate consciousness of guilt, and a trial court may consider this as evidence, along with other proof, from which guilt may be inferred." **Commonwealth v. Dent**, 837 A.2d 571, 576 (Pa. Super. 2003) (quotation marks and citation omitted).

In the case *sub judice*, the trial court opined:

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, the evidence clearly established each element of the crime of retail theft. . . . The property in question, the Milwaukee power tool and batteries clearly constitute "merchandise" within the meaning of the retail theft statute. The evidence established that merchandise was "offered for sale" at Home Depot, a retailer of home improvement and construction products. The only remaining element question is whether there was sufficient evidence for the jury to conclude that [Appellant] intended to deprive the store of its property without paying for it. In meeting its burden of proof with regard to this element, the Commonwealth is not required to show that the merchandise was removed from the building or that [Appellant] passed all points of sale. . . . [T]he intent to deprive may be inferred from a defendant's act of concealing the property, either on his person or within the store. Here, [Appellant] concealed items inside his jacket. . . . The jury's finding of intent was also supported by evidence [Appellant] attempted to remove the security sensor from one of the items, that he conceal[ed] both items in another area of the store after store security began to follow him and that, when confronted by store security, he attempted to flee the scene.

Trial Ct. Op. at 4-5 (citations and footnotes omitted). We agree no relief is due.

At trial, Mr. Baran, the store's head of loss prevention, testified as follows:

[The Commonwealth]: What does [Appellant] do when he gets to Aisle 2, the garden department?

A: When he gets to Aisle 2, he stands between two displays that are in the aisle in an attempt to conceal himself and begins trying to remove the security sensor from one of the Milwaukee items.

Q: And are you watching him do all this on the floor?

A: Yes. I am at the opposite end of the aisle.

Q: Do you recall which item it was that he was trying to remove the security item?

A: It was the batteries valued at $99.

* * *

Q: So basically what is the purpose of that security tag?

A: To prevent or deter theft.

* * *

Q: Was [Appellant] successful in trying to pull that off by himself?

A: No, he was not.

Q: What did he do then?

A: Walked several more feet carrying both of the Milwaukee products and concealed them in his jacket.

Q: Could you describe, what do you mean by that?

A: Basically place them inside his jacket, whether in a pocket or something, and then zipped his coat up three quarters of the way.

Q: And then what did you [sic] do from there?

A: Then he proceeds to the outside greenhouse of the garden department.

* * *

Q: Is there anyone else outside of that greenhouse section of the store when [Appellant] goes out there?

* * *

A: No, there was nobody else out there.

* * *

Q: . . . What happened in the greenhouse section of the store?

A: I followed him out . . . . I observed him walk behind a large cart of plants . . . .

This cart is approximately 6 feet wide by about 7 feet tall, full of plants. I observed him walk behind there, at which time I came around to get a different angle so I could see him, and then watched him remove the item from his jacket and place it in the plants.

* * *

Q: From the place where [Appellant] placed the power tools, about how much further is it towards a register, a register?

A: . . . I would say approximately 30 feet, 35 feet. . . .

Q: And is that the exit out of the store, also?

A: Yes. That is one of the exits, yes, sir.

* * *

Q: . . . Did you confront [Appellant] outside of the store?

A: Yes. As he walked out of the garden gates . . . .

Q: What happened during that incident?

A: I walked in front of him, identified myself as loss prevention, asked him to come back into the store. He immediately became confrontational. Probably spent maybe approximately ten seconds asking him repeatedly to come back in the store. He refused, and then attempted to run from me.

* * *

Q: Where did he try to go?

> A: He attempted to run to my right. I was able to grab him by the jacket. We scuffed around, ended up falling to the ground. And then with the assistance of two customers I was able to handcuff him and then escort him back into the store.

N.T., 3/22/16, at 76-81, 87-88.

Instantly, Appellant concealed merchandise on his person and in the store which was sufficient evidence of his intent to deprive the merchant of the items. **See** 18 Pa.C.S. § 3929(c); **Jones**, 528 A.2d at 1362; **Martin**, 446 A.2d at 968. Appellant attempted to flee which is indicative of consciousness of guilt. **See Dent**, 837 A.2d at 576. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find the evidence was sufficient to convict Appellant of retail theft. **See** 18 Pa.C.S. § 3929(a)(1); **Ratsamy**, 934 A.2d at 1237; **Caban**, 60 A.3d at 132.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2016