J. S63004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
  :         PENNSYLVANIA
          v.   :
  :
KARIE DOZIER,   :       No. 2171 EDA 2015
  :
        Appellant   :


Appeal from the Judgment of Sentence, June 26, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0003036-2014


BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND FITZGERALD,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 20, 2016**

Karie Dozier appeals from the June 26, 2015 aggregate judgment of sentence of 17 to 35 years' imprisonment imposed after he was found guilty of attempted murder, aggravated assault, criminal conspiracy to commit murder, possessing instruments of crime ("PIC"), and multiple violations of the Uniform Firearms Act ("UFA").[1]  After careful review, we affirm.

The trial court summarized the relevant facts of this case as follows:

> [O]n November 29, 2013, at approximately 9:45 p.m., [Philadelphia Police Officer Milord Celce] received a radio call for a shooting and person with a gun at 2603 West Harold Street in Philadelphia. Officer Celce, who was approximately four (4) blocks away at the time, promptly arrived at the above

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901, 2702, 903, 1102(c), 907, 6105, 6106, and 6108, respectively.

location, where he observed bullet holes in the windows and encountered the complainant, Enoch Carter. Based on his conversation with Mr. Carter, they proceeded to 2642 North 26th Street -- literally just around the corner, not even 30 seconds later -- where they met Highway Patrol Officer Reid, and knocked on the door. Appellant's cohort, Co-Defendant Jamar Matthews, who was in a wheelchair, answered the door; [a]ppellant was seated on a couch directly facing the front door of the residence. As soon as Mr. Carter saw him, he yelled and pointed to [a]ppellant, [t]hat's the guy.

Officer Celce placed [a]ppellant on the floor to detain him. He lifted the cushion where [a]ppellant was sitting and recovered a handgun; [a]ppellant was sitting on the gun. Officer Celce escorted [a]ppellant outside, where he was positively identified by Mr. Carter, and took him into custody. Mr. Carter also was transported to Central Detectives for an interview, during which Officer Celce learned of Co-Defendant Matthews' involvement; he then went back to the residence and placed Matthews under arrest at 12:15 a.m.

. . . . Mr. Carter testified that, prior to the shooting, he had lived around the corner from Co-Defendant Matthews ("Matthews") for approximately one and one-half (1½) years and was friends with him. Mr. Carter used to hang out with Matthews frequently, and also helped him with chores such as laundry and grocery shopping. Several weeks before the shooting, on October 17, 2013, Matthews was driving a van (with handicapped hand controls) in which Mr. Carter and a female friend of Matthews were riding as passengers. Approaching a red light, [a]ppellant mistook the accelerator for the brakes, and crashed into a building, injuring Mr. Carter and the female. Matthews was arrested at the scene for his involvement in the crash. Mr. Carter was transported to the hospital via ambulance for treatment and subsequently required physical therapy for his injuries. Several weeks later, Mr. Carter commenced a personal injury lawsuit

against Matthews, which Matthews took to heart. Matthews thereafter had several different individuals approach Mr. Carter to persuade him to drop the lawsuit, including a younger gentleman earlier on the day of the shooting, who proposed a fistfight in front of Matthews' residence. Mr. Carter declined the proposal and went home.

Later that evening, at approximately 9:40 p.m., [a]ppellant knocked on Mr. Carter's door. Mr. Carter stuck his head out of his second-story window to see who it was. Appellant asked him why he had a beef with Matthews; Mr. Carter explained that he did not have a problem with Matthews, it was Matthews who had a problem with him due to the lawsuit. After speaking with [a]ppellant for five (5) to seven (7) minutes, Matthews approached on his wheelchair and parked it next to [a]ppellant. Appellant then asked Matthews, "what do you want me to do[?]" at which point Matthews said "go ahead[.]" Right on cue, [a]ppellant retrieved a black handgun, pointed it at Mr. Carter and opened fire. Mr. Carter saw the flash from the gun, and a bullet went through his window; he fell back into the home. As he was falling, [a]ppellant fired several more shots at him. Fortunately, none of the bullets struck Mr. Carter, who immediately dialed 911 to summon police. During the call, he provided a physical description of [a]ppellant and reported Matthews'[] involvement. A few minutes later, he accompanied police to Matthews' residence, where Appellant and the handgun were taken into custody following Mr. Carter's positive identification.

. . . . [Ballistics expert and Philadelphia Police Officer Jesus] Cruz testified that he test-fired the handgun that [a]ppellant was sitting on and compared the fired cartridge casing ("FCC") with the five (5) FCCs recovered in front of Mr. Carter's residence. Based on his analysis, which was peer-reviewed, he concluded to a reasonable degree of scientific certainty that each of the five (5) FCCs recovered at the scene was, in fact, fired from [a]ppellant's handgun.

. . . . [Philadelphia Police Detective Michael] Repici testified that, on November 29, 2013, he was assigned to investigate this matter. At approximately 11:35 p.m., he interviewed Mr. Carter at Central Detectives. When Mr. Carter described Matthews'[] involvement, Detective Repici asked Officer Celce -- who was present -- if he knew where this guy is? Officer Celce responded, [y]eah, he's still back there, at which point Detective Repici directed him to arrest [a]ppellant. Officer Celce embarked on this quest a few minutes prior to 12:00 a.m.

Detective Repici then went to the crime scene, 2603 Harold Street, which was being held, or secured, by fellow officers. There, he recovered under property receipt four (4) FCCs on the pavement and one (1) FCC in the street, all in close proximity to each other in front of Mr. Carter's residence. He also took photographs of all the evidence, including the bullet holes in the windows and inside the residence, which he described as the photos were displayed to the jury. Detective Repici then proceeded to 2642 North 26th Street, where he took photographs of the couch and black handgun, the latter of which he recovered under property receipt.

Finally, the Commonwealth introduced via stipulation: (a) certificates of non-licensure with respect to both [a]ppellant and Matthews, establishing that neither male was licensed to carry a firearm and thus not permitted to carry a firearm in Pennsylvania; (b) authenticity of prison phone call records between [a]ppellant and Matthews, in which they discuss methods to prevent the case from going forward -- which recordings were played for, and their transcripts displayed to, the jury.

Trial court opinion, 11/24/15 at 2-5 (citations to notes of testimony, footnotes, and some internal quotation marks omitted).

Appellant was arrested in connection with this incident and charged with the aforementioned offenses on March 25, 2014. On April 21, 2015, appellant proceeded to a jury trial alongside Matthews. Following a three-day trial, the jury found appellant guilty of attempted murder, aggravated assault, criminal conspiracy to commit murder, PIC, carrying a firearm without a license, and carrying a firearm on public streets or public property in Philadelphia. That same day, the trial court found appellant guilty of unlawful possession of a firearm. Following the completion of a pre-sentence investigation ("PSI") report, the trial court sentenced appellant to 17 to 35 years' imprisonment on June 26, 2015. On July 6, 2015, appellant filed post-sentence motions alleging the verdict was against the weight of the evidence and for reconsideration of his sentence. The trial court denied appellant's post-sentence motions on July 8, 2015. This timely appeal followed on July 21, 2015.[2]

On appeal, appellant raises the following issues for our review:

1. Whether the trial court erred by instructing the jury on constructive possession where the Commonwealth failed to request said instruction?

2. Whether the verdicts of guilty on all charges w[ere] against the weight of the evidence where they were based on inconsistent and unreliable eyewitness identification testimony; [w]here the testimony regarding the recovery of the firearm was conflicting, failing to prove constructive possession; and where the

_____

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

damage to the complainant's home could not be solely attributed to the charged crime?

3. Whether the evidence presented was insufficient to sustain the convictions for attempted murder, aggravated assault, and criminal conspiracy where the Commonwealth failed to prove that he possessed the requisite intent or malice?

4. Whether the evidence was insufficient to sustain the convictions, beyond a reasonable doubt, to the charges of Violation of the Uniform Firearms Act and [PIC] where the Commonwealth failed to prove appellant constructively possessed the recovered firearm?

5. Whether the [trial c]ourt erred in imposing an excessive and manifestly unreasonable sentence by ordering all three (3) [UFA] counts to run consecutively to one another and consecutively to the conviction for attempted murder, where said sentences were based on factors already accounted for in the prior record score . . . and the offense gravity score, and in failing to provide reasons justifying its decision?

Appellant's brief at 6 (citations omitted). For the purposes of our review, we have elected to address appellant's claims in a slightly different order than presented in his appellate brief.

Appellant first argues the trial court erred in instructing the jury on constructive possession where the Commonwealth failed to request said instruction. (*Id.* at 17.)

"[A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and

accurately presented to the jury for its consideration." ***Commonwealth v. Charleston***, 94 A.3d 1012, 1021 (Pa.Super. 2014), ***appeal denied***, 104 A.3d 523 (Pa. 2014) (citation omitted). "A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue." ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa.Super. 2013).

During the course of its deliberations, the jury submitted a question to the trial court requesting the definition of possession. (Notes of testimony, 4/23/15 at 115.) The trial court heard argument on the issue and ultimately instructed the jury, over appellant's objection, on the legal definition of possession and its relation to constructive possession. (***See id.*** at 119-121.) Appellant maintains that "by providing clarification through the instruction the [trial] court imposed upon the jury's role as fact-finder . . . [and] essentially bolstered the Commonwealth's case." (Appellant's brief at 17.) We disagree.

Pennsylvania Rule of Criminal Procedure 647(D)[3] authorizes the trial court to provide additional instructions to the jury after the jury has retired to consider its verdict. In ***Commonwealth v. Davalos***, 779 A.2d 1190 (Pa.Super. 2001), ***appeal denied***, 790 A.2d 1013 (Pa. 2001), a panel of this court reasoned as follows:

---

[3] Rule 647(D) provides, in relevant part, that "[a]fter the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties. . . ." Pa.R.Crim.P. 647(D).

> The scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge. There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion.

*Id.* at 1195 (citations omitted).

Instantly, the record reflects that the trial court properly delivered clarifying instructions in response to the jury's inquiry, as permitted by Rule 647(D). Read as a whole, these instructions clearly and accurately set forth the applicable law on possession and were neither misleading nor confusing to the jury. Accordingly, appellant's claim of trial court error must fail.

We now turn to appellant's claim that there was insufficient evidence to sustain his convictions for attempted murder, aggravated assault, and criminal conspiracy to commit murder because the Commonwealth failed to prove he had the specific intent to kill or seriously injure Carter. (Appellant's brief at 21.) In support of this assertion, appellant contends that he was only intending "to scare Mr. Carter[,]" and "it is more likely that the weapon was fired only as a means of intimidation." (*Id.* at 23.)

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a

reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009), *appeal denied*, 4 A.3d 1054 (Pa. 2010) (citations omitted).

"A person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). A conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant "t[ook] a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." *Commonwealth v. Tucker*, ___ A.3d ___, 2016 WL 4035602, at *7 (Pa.Super. July 19, 2016) (citation omitted). It is the element of a willful, premeditated, and deliberate intent to kill that distinguishes first-degree murder from all other types of criminal homicide. "To convict a defendant of first-degree murder, the jury must find that (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with a specific intent to kill." *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008), *cert. denied*, 556 U.S. 1186 (2009) (citation omitted); 18 Pa.C.S.A. § 2502.

Criminal conspiracy, in turn, requires the Commonwealth to establish that appellant "(1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa.Super. 2016).

Additionally, a person will be found guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). The term "serious bodily injury" is defined by statute as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Where the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury. *Commonwealth v. Matthew*, 909 A.2d 1254, 1257-1258 (Pa. 2006).

> For aggravated assault purposes, an "attempt" is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances.

*Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa.Super. 2013) (*en banc*), *appeal denied*, 78 A.3d 1089 (Pa. 2013) (citations and some internal quotation marks omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was ample evidence for the jury to conclude that appellant possessed the requisite intent to kill or seriously injure Carter. The testimony presented at trial established that appellant's co-defendant, Matthews, was angry with Carter for filing a lawsuit against him and made multiple attempts to persuade him to forgo the suit. (Notes of testimony, 4/22/15 at 10-14, 22-23, 97.) On the day of the alleged incident, Matthews enlisted appellant to speak with Carter about the "beef" he had with Matthews. (*Id.* at 15-18.) During the course of this conversation, Matthews expressly directed appellant to "go ahead," and appellant subsequently fired five gunshots at Carter's head as he hung out of his second-story window. (*Id.* at 19-20, 68-69.) Thereafter, Officer Celce found appellant and Matthews sitting together at Matthews's residence. (Notes of testimony, 4/21/15 at 90-92.)

It is well settled that "[t]he firing of a bullet in the general area in which vital organs are located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt." *Commonwealth v. Manley*, 985 A.2d 256, 272 (Pa.Super. 2009), *appeal denied*, 996 A.2d 491 (Pa. 2010) (citation omitted). Likewise, the act of firing a gun at

someone is sufficient to support a conviction for aggravated assault, even when the victim is not actually injured. *See Commonwealth v. McCalman*, 795 A.2d 412, 415-416 (Pa.Super. 2002), *appeal denied*, 812 A.2d 1228 (Pa. 2002) (concluding that appellant possessed the intent to cause serious bodily injury where he fired a gun in the direction of victims and narrowly missed them); *Commonwealth v. Galindes*, 786 A.2d 1004, 1012 (Pa.Super. 2002), *appeal denied*, 803 A.2d 733 (Pa. 2002) (holding that the act of firing a gun at victim was sufficient to establish that appellant attempted to cause serious bodily injury to the victim, even though the victim was not struck by any of the bullets). Based on the foregoing, appellant's claim that there was insufficient evidence to sustain his convictions for attempted murder, aggravated assault, and criminal conspiracy to commit murder must fail.

Appellant next argues there was insufficient evidence to sustain his convictions for PIC, unlawful possession of a firearm, carrying a firearm without a license, and carrying a firearm on public streets or public property in Philadelphia. (Appellant's brief at 23.) In support of this contention, appellant avers that the Commonwealth failed to prove he was in possession of the firearm in question. (*Id.* at 23-24.) For the following reasons, we disagree.

Possession of a firearm can be established by showing either actual or constructive possession. In situations where it cannot be proven that a

suspect had the firearm on his person, the Commonwealth is required to prove constructive possession. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013) (citations and internal quotation marks omitted). As with any other element of a crime, the Commonwealth may sustain its burden of proving constructive possession by means of wholly circumstantial evidence, and the requisite intent may be inferred from examination of the totality of the circumstances. *Hopkins*, 67 A.3d at 820.

Upon review of the evidence in the light most favorable to the Commonwealth, we conclude that there was ample evidence for the jury to conclude that appellant was guilty of PIC and Sections 6105, 6106, and 6108 of the UFA. The record belies appellant's claim that he was not in actual or constructive possession of the firearm in question. As discussed, the evidence adduced at trial established that appellant fired a handgun at Carter multiple times while on 2603 West Harold Street in Philadelphia. (Notes of testimony, 4/21/15 at 87-88.) At trial, the Commonwealth

introduced a certificate of non-licensure that demonstrated that appellant was not licensed to carry a firearm, and appellant had a prior felony conviction enumerated in 18 Pa.C.S.A. § 6105(b) that prohibited him from possessing a firearm. (Notes of testimony, 4/22/15 at 193; 4/23/15 at 136.) Officer Celce testified that when he located appellant at Matthews' house minutes after this incident, appellant was on the couch with his hand between his legs and a handgun was found directly under the couch cushion where he was sitting. (Notes of testimony, 4/21/15 at 91-92.) Additionally, Officer Cruz testified to a reasonable degree of scientific certainty as an expert in the field of ballistics that the cartridge casings recovered at Carter's residence were fired from the same handgun that appellant was found sitting on. (Notes of testimony, 4/22/15 at 117-132.) Based on the foregoing, appellant's claim that there is insufficient evidence to sustain his firearms convictions must fail.

We now turn to appellant's claim that the verdict was against the weight of the evidence. (Appellant's brief at 17.) "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Galvin***, 985 A.2d 783, 793 (Pa. 2009), ***cert. denied***, 559 U.S. 1051 (2010) (citation omitted).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation

omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and

emphasis omitted).

Instantly, appellant contends the verdict is against the weight of the

evidence because Carter's identification of appellant was unreliable;

Officer Celce's testimony concerning the recovery of the firearm was inconsistent; and the physical evidence found at Carter's home could not be attributed solely to the charged crime. (Appellant's brief at 18-21.)

Upon review, we discern no abuse of discretion on the part of the trial court in rejecting appellant's weight claim. "The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Caban***, 60 A.3d 120, 132 (Pa.Super. 2012), ***appeal denied***, 79 A.3d 1097 (Pa. 2013) (citation omitted). Here, the jury evidently found the Commonwealth's witnesses credible and elected not to believe appellant's version of the events. We are precluded from reweighing the evidence and substituting our judgment for that of the fact-finder. ***Clay***, 64 A.3d at 1055. Accordingly, appellant's weight claim must fail.

In his final claim, appellant challenges the discretionary aspects of his sentence. (Appellant's brief at 25-28.) Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. ***See Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a

> substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Instantly, the record reveals that appellant has filed a timely notice of appeal and has preserved his issue in a post-sentence motion. Appellant has also included a statement in his brief that comports with the requirements of Pa.R.A.P. 2119(f). (*See* appellant's brief at 15-16.) Accordingly, we must determine whether appellant has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa.Super. 2012), *appeal denied*, 63 A.3d 774 (Pa. 2013) (citation omitted).

Appellant first contends his sentence was "excessive and manifestly unreasonable" because the trial court elected to impose consecutive sentences for his UFA violations and the attempted murder charge. (Appellant's brief at 25.)

The "[l]ong standing precedent of this [c]ourt recognizes that 42 Pa.C.S.A. [§] 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa.Super. 2005). Generally, the imposition of consecutive sentences does not raise a substantial question. *See Commonwealth v. Pass*, 914 A.2d 442, 446 (Pa.Super. 2006) (stating that a challenge to the trial court's discretion to impose a consecutive sentence does not raise a substantial question). Such a claim may raise a substantial question "in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa.Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014) (citation omitted). This case simply does not present "extreme circumstances" and appellant's sentence is not unduly harsh considering the criminal conduct that occurred in the case, the nature of the crime, and the length of imprisonment. Accordingly, the trial court's decision to impose consecutive, rather than concurrent, sentences does not present a substantial question for our review.

However, to the extent appellant argues in his Rule 2119(f) statement that, "[t]here is no indication that the [trial] court considered . . . appellant's individual rehabilitative needs" or any of the other relevant factors in Section

9721(b), we find this claim presents a substantial question for our review. (**See** appellant's brief at 15-16.) This court has recognized that an assertion that the trial court failed to account for appellant's rehabilitative needs was a substantial question suitable for appellate review. **Commonwealth v. Baker**, 72 A.3d 652, 662 (Pa.Super. 2013), **appeal denied**, 86 A.3d 231 (Pa. 2014). Likewise, appellant's contention the trial court considered a number of "impermissible factors" in fashioning his sentence, including "focusing primarily on his prior criminal record[,]" also raises a substantial question. **See Allen**, 24 A.3d at 1064-1065 (stating, "a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." (citation omitted)). Accordingly, we proceed to consider the merits of these discretionary aspects of sentencing claims.

When reviewing a challenge to the discretionary aspects of sentencing, we determine whether the trial court has abused its discretion.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the [a]ppellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Zirkle**, 107 A.3d 127, 132 (Pa.Super. 2014), **appeal denied**, 117 A.3d 297 (Pa. 2015) (citation omitted). "[This Court must

accord the sentencing court great weight as it is in [the] best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1134 (Pa.Super. 2009), ***appeal denied***, 987 A.2d 161 (Pa. 2009) (citation omitted).

Herein, the record reveals that the trial court considered and weighed numerous factors in fashioning appellant's sentence. At the June 26, 2015 sentencing hearing, the trial court addressed appellant's difficult childhood and upbringing, his educational background and prior employment, his significant history of mental illness, and the fact that he made a conscious choice to "show[] up to somebody else's fight with a gun." (Notes of testimony, 6/26/15 at 11-12, 14.) The trial court also considered appellant's extensive criminal history, noting that, as an adult, appellant has 13 arrests, 11 convictions, 8 commitments, and 2 violations of probation. (***Id.*** at 12-13.) Additionally, the trial court heard testimony from appellant at the hearing and was aware of the fact that appellant had previously been the victim of a gunshot and had essentially been abandoned by his mother until he was eight years old. (***Id.*** at 8-11.) Although the record reflects that the trial court did not specifically state at the sentencing hearing that it considered appellant's rehabilitative needs, the trial court was in possession of a PSI report. Where the trial court has the benefit of a PSI report, as is the case here, "we shall . . . presume that the sentencing judge was aware

of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa.Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (citation omitted). Accordingly, we find no abuse of the trial court's discretion and appellant's challenge to the discretionary aspects of his sentence must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2016